STATE, ex rel. BRUNS COAL COMPANY, INC., Plaintiff, v. UNITED MINE WORKERS OF AMERICA et, Defendants.

Common Pleas Court, Muskingum County.

No. 38040.   Decided November 15, 1952.

Graham, Graham, Hollingsworth, Gottlieb & Johnston, Ernest B. Graham and Donald Hollingsworth, Zanesville, for defendants.

Alfred D. Treherne, Columbus, special appearance for defendant United Mine Workers of America, and general appearance for all other defendants except defendant Steve George Kubic, Aubrey Wendt, Columbus.

Glenn Kreider, Newark, for all defendants except defendant United Mine Workers of America.

## OPINION

By CROSSLAND, J.

Pursuant to the arrest on October 31, 1952, of defendant Steve George Kubic, subsequent Charge of Contempt filed against him the next day, November 1, 1952, and hearing thereon November 7, 1952, the Court finds no satisfactory or sufficient evidence relative to the time or occasion of said arrest upon which to base said Charge, the consideration and determination of which is necessarily confined to said date and occasion of October 31, 1952, and said Charge as so considered and determined is accordingly dismissed, but without prejudice to the later charge of Contempt, filed November 7, 1952, and heard along with that against other named defendants November 12th and 13th, 1952. Said defendant is therefore found Not Guilty of Contempt on and as of October 31, 1952, is discharged as to the same and bond of $500 furnished therefor to the sheriff October 31, 1952, ordered released.

Is the United Mine Workers of America, and the officers and members thereof, Washington, D. C. before the Court as a

national or international union or organization in this proceeding for Contempt of the Injunction Order of the Court of May 28, 1952?

Said organization was an original party defendant in this cause at its inception October 1, 1951; on October 2, 1951, was mailed by registered mail with signed return receipt dated October 3, 1951, for "a true and certified copy of this writ, together with a certified copy of the Journal Entry filed in this cause," which was a restraining order dated October 1, 1951, enlarged in paragraph five thereof by Entry of October 11, 1951, pursuant to which, incidentally, at the previous instance of and with the consent of Attorney Alfred Treherne, appearances were entered on behalf of Adolph Pacifico individually and as president of District No. 6, United Mine Workers of America, Walter Kovaleski, individually and as organizer and member of the United Mine Workers of America, George Waters, individually and as organizer and member of District No. 6, United Mine Workers of America, and for all other defendants who are members of the United Mine Workers of America and who have been made parties to this action and have been served with summons, **or have voluntarily entered their appearances herein.** (Emphasis by the court.)

Thereafter, pursuant to the Entry of October 11, 1951, and Journal Entry of temporary injunction dated November 1, 1951, answer was filed November 2, 1951, by "one of the attorneys of record for the defendants herein," Robert G. Tague, and sworn to before the said Alfred D. Treherne, wherein defendants, without any stated exception, filed their First and Second Defenses, thus entering the general appearances for all subsequent purposes of all defendants, including the organization and union of the United Mine Workers of America; to which answer plaintiff replied November 21, 1951.

Later, upon hearing, after assignment for trial upon the issues thus made between plaintiff and all defendants, Journal Entry Granting Permanent Injunction was filed May 28, 1952, and appeal thereof to the Court of Appeals dismissed, with the executed approval by Mr. Treherne of himself and said Tague as attorneys for defendants.

Said Journal Entry Granting Permanent Injunction approved by said Tague, recited as its first and opening paragraph:

"This cause came on this day for hearing upon the petition of the plaintiff for a permanent injunction, the answer of the defendant and the evidence, **the parties being present in Court personally or by counsel.**" (Emphasis by the court.)

Thus once again and finally, as a determination and final

order in this cause, it is agreed and recited by record counsel that the parties are either present personally or by counsel.

At no time and in no way was there ever even a hint or suggestion that any single named defendant was not a party and not before the Court. On the contrary, if not brought in by service all came in by answer and all, including the United Mine Workers of America, became directly charged with full knowledge and the effect of the Court's comprehensive, detailed and explicit Order of Permanent Injunction, the second paragraph of which specifically directed to the United Mine Workers of America, District No. 6, United Mine Workers of America, and Adolph Pacifico, President of District No. 6, United Mine Workers of America, said:

"The Court finds and considers that aggressive and unlawful disturbances evidenced on the part of defendant organization and its officers actually motivated and inspired unlawful transgressions by individual defendants, which the Court further finds and considers not only an arrogant and unwarranted intrusion upon the personal liberty of plaintiff's employees, as well as unlawfully violative of plaintiff's business enterprise and property, but also a deliberate affront and direct challenge to the authority of popular government, which it is a fundamental concern and duty of Courts to help protect, and that assurance of lawful and peaceful future conduct of defendants requires and justifies the granting of a permanent injunction as hereinafter provided."

The Court considers that the United Mine Workers of America as a party defendant in and to the within action, being already in and before the Court, is fully amenable to its discipline in the event of a Contempt and subject to being chargeable therewith without the necessary process possibly otherwise attendant upon an original action in order to make it answerable; and that its actual receipt by registered mail on November 3, 1952, of a certified copy of the Summons For Contempt directed to it, together with a certified copy of the Affidavit Charging it with Contempt and Order to Appear on Wednesday, the 12th day of November, 1952, at 9:00 o'clock A. M. of October 31, 1952, under the Court's Rule No. XXIV, providing therefor pursuant to the provisions and authority of §11297-1 GC, brings the United Mine Workers of America before the Court in this matter.

Motion to dismiss United Mine Workers of America as party defendant in and to this matter of the Charge against it of Contempt of the Court's Order of May 28, 1952, is therefore overruled and exceptions are noted to it in that regard.

Referring again to the May 28, 1952, Journal Entry Grant-

ing Permanent Injunction, immediately preceding the seven paragraphs of the Injunction Order is the third paragraph of the Entry, which reads:

"It is further ordered, adjudged and decreed that **the defendants and each of them named and unnamed, and all others associated with them**, be and they hereby are permanently enjoined from": (Emphasis by the court.)

Not only are each and all of the parties defendant who were defendants in the original action and to the final order of May 28, 1952, who are defendants in this matter, before the Court, but also, likewise, are each and all of the defendants in this matter who were not originally parties defendant to the action, and they may be adjudged guilty of contempt of said injunction order if in fact so found.

"One who is not a party to the injunction suit, but who is within the class of persons whose conduct is intended to be restrained or who acts in concert with a party litigant or with a third person, is guilty of contempt. Persons who acts forbidden by the injunction order." 12 American Juristo the injunction suit may be held guilty of contempt in doing acts forbidden by the injunction order." (12 American Jurisprudence, 407, Sec. 26, on "Disobedience of Injunctions."

Did these six defendants herein who were not originally defendants in this action have notice and knowledge of the Court's order of May 28, 1952?

Under all the facts and circumstances in evidence, of those who were already named defendants herein and those six not originally expressly named, the general, special and specific interminglings and associations shown in union membership and activities, common assemblies both active and passive, unanimity of purpose "to organize the unorganized," propinquity of employment, proximity of residence, facility and celerity of assembly, established organizational positions, functions and operations of district president Pacifico and organizers Waters, Kovaleski and Kubic and the presence of all defendants other than Pacifico, at one or another of various points effective to close down the mining and transportation of coal in the attempted operation of plaintiff's business on October 23, 1952 and October 30, 1952 and between and since, leaves no doubt whatever in the mind of the Court that defendants Smith, Headley, Wade, Compton, Kubic and Whitehead equally knew fully the fact, nature and extent of the Court's Injunction Order of May 28, 1952, long prior to October 23, 1952, and it was entirely logical and natural that no one of them had the temerity to attempt to falsify to the contrary.

Incidentally, defendant Headley was identified by both George Noel and Charles Dupler as the man who struck Bruns,

who was unquestionably struck from behind. The court does not believe the testimony of Fred Peyton and Betty Morgan, both of whom were directly approached by Headley and were either afraid or unwilling to tell the truth.

Among other particulars specifically enjoined were:

"From interfering by coercion, intimidation, violence or threats of violence or suggestions of danger to any of the several employees of plaintiff;"

"From using abusive, slanderous or threatening language to any employees;"

"From any unlawful obstructing, delaying or stopping the business of plaintiff;"

"Unlawfully loitering in or near the mining property, operations—or from unlawfully picketing said mining property—or from disturbing in any manner the peace, quiet and order of the mining property, operations or place of business of plaintiff,—or from in any way threatening, intimidating, injuring or attempting to injure or coerce any—employees of plaintiff's customers—or from threatening, intimidating, injuring or attempting to injure or interfere with plaintiff's trucks;"

"From suggesting, directing, inciting, abetting or aiding any person or persons in committing any of the acts complained of in this petition or set forth in this restraining order, particularly inducing or inciting large crowds to congregate at or near or upon the mining property, operations or offices of plaintiff;"

"Not more than two pickets at any entrance way used by employees going to and from said mining property—at no time congregate in such manner that there shall be more than one at each side of each entrance and shall stand when picketing individually on separate sides of said entrance; each picket shall remain on the side of the entrance way that he stations himself on and shall remain on that side until he ceases picketing."

A mere reading of the foregoing, without further statement or application of the facts in evidence, suffices to demonstrate from the evidence beyond any reasonable doubt, the utter, wilfull and wanton disregard of most of the Court's Order of Permanent Injunction, on the part of every defendant in this matter.

The Actions and conduct of each and all of these defendants was not only wholly unprovoked but a calculated and deliberate disrespect of consummate contumacy, unparalleled in recent Court history, a devastating refutation of the implied professions and protestations of injured innocence, in

which the particulars of individual participation, which range from intimidation by mere presence of large numbers to savage animal brutality, are yet far lesser than the over-all pattern and precept of directly attacking and imperiling the fundamental principles that made this country a land of equal freedom for all and of liberty under law.

The activities and acts of all defendants on October 23, 1952, and the recurrent acts and activities of defendants, United Mine Workers of America, District No. 6, United Mine Workers of America, Adolph Pacifico, president, District No. 6, United Mine Workers of America, Kovaleski, Waters and Kubic, on October 30, 1952, each and all constituted reprehensible and inexcusable assaults upon this Court in contradiction of the respect and observance due and owing to its Injunction Order of May 28, 1952.

One issue that transcends all others in this proceeding is whether or not voluntary respect for law, upon which free government largely depends for its continued existence, shall prevail or perish in the coal lands and mining areas of southern Muskingum County.

This Court would be less than forthright in its approach and altogether failing in the trust imposed upon it to speak plainly and directly the conviction it holds from the evidence before it if it did not address itself to the larger issue here engaged.

Shall large bodies of men, many perhaps unwillingly, and with individual misgivings but intelligent perception of the lawless character of their participation, be led or driven by brazen and ruthless leadership into contemptuously flouting duly constituted local governmental authority by the implication or exertion of force and violence?

No legalistic legerdemain or devious hocuspocus, called upon in defense of defiance, will obscure or erase the central fact that such assemblies of men gathered at such points as herein evidenced, whether at the mine or on the public highways, whether menacing production and loading or transportation, all pertinent and pertaining to the dates and events charged, do not just happen. They are contrived, planned and promoted. Furthermore, they are a most shameful and disgraceful repudiation and destruction of the tenets of freedom and liberty, the free choice of free men who want to do lawful work, to work freely, without any outside interference or molestation, and the basic liberty of lawful business that wants to operate without outside private dictation and without having to battle terroristic insurrections.

No equivocation over technical niceties beclouds the funda-

mental issue underlying this proceeding and which permeates the evidence herein submitted. Plaintiff and its employees were and are denied their inalienable constitutional and legal right to engage in lawful business and employment by the exercise, threat and intimidation of force and violence on the part of lawlessly led men whose arrogant leadership was and is contemptuously intent upon destroying the effect of this Court's permanent injunction decree.

The limitations of law in the exercise of local governmental authority, wisely designed to prevent captious curtailment of personal liberty, when appealed to and exploited to the end and for the purpose of destroying the liberty and freedom of other persons, become an agency of tyranny in the hands of those who thus wrongly seek to subvert and pervert such limitations to their own impudent demands.

This Court, in maintaining an impersonal, impartial and unbiased view in all matters, causes and proceedings coming before it, is not thereby called upon, in reflecting upon the impact of the evidence herein, to ignore reality, accept the ridiculous and indulge a fallacious presumption that men approaching or converging in concert, do so without design, direction or leadership, or that such leadership is not that assigned to them by the labor organization to which they belong, or that a congregation of such men under such leadership is not designed to or does not impart intimidation and fear in and among those persons against whom it is obviously and patently directed. On the contrary, the Court finds and concludes in this matter that the defendants, each and all of them, intended and effectuated exactly what occurred, including the cessation of business and employment, and that all are blameworthy and responsible for the acts, actions and misconduct of each.

It will be a sorry day for this republic if a judge is not permitted or does not permit himself to measure by his precise utterance the nature and extent of the configuration of his analysis of the evidence and the substance behind it and to express his candid observations pertinent thereto as well as the inferences and conclusions naturally and logically deducible therefrom.

This Court, in its sworn effort to fulfill its own responsibility to the very comprehensive and detailed injunction order decreed in this case, sought to implement it by directing the hire of additional deputy sheriffs to "prevent violation or frustration of any of said orders in any respect and to make arrests whenever warranted," which is costing Muskingum County well over $1,000 weekly, upon the postulate that a court

is entitled to the enforcement of its lawfully made and promulgated judgment orders.

"The power to maintain order—and to enforce process to the end that effect may be given to judgments; must inhere in every court or the purpose of its creation fails. Without such power no other could be exercised." (Hale v. State, 55 Oh St 213.)

Gathering assemblies of men in excess of two in number approaching in the direction of mine property entrances, as were these individual defendants, their identified and unidentified fellow unionists, and defendant organizers, on October 23, 1952 and October 30, 1952, and, by and through them and their officers and officials, the defendant organization of the United Mine Workers of America and its defendant official and officer, Adolph Pacifico and his organizers of District No. 6, were each and all acting in determined, wilfull, flagrant and contemptuous disregard and violation of the existing final order and decree of permanent injunction, even though the defendant Pacifico was not personally, physically present. The acts committed on both dates of October 23rd, and 30th, as well as the shut-down between and since, were and is the natural and contemplated consequences of the inmoving parade of vehicles desired, fostered and inspired by the national and district leadership and said district organizers employed and operating for and in their behalf.

The Court finds from the evidence before it in this matter as it found upon the evidence in the injunction hearing, as stated in its said Entry of May 28, 1952, to-wit:

"that aggressive and unlawful disturbances evidenced on the part of defendant organization and its officers actually motivated and inspired unlawful transgressions by individual defendants."

The Court, reiterating the explicit language of that part of its within order of October 25, 1952, directed to the Sheriff "to prevent violation or frustration of any of said orders in any respect and to make arrests whenever warranted," fully expects that no further such intrusions within the area, if attempted, be permitted, and further orders, in view of the violence already occasioned in defiance of the Court's injunction order and the unwillingness thereby manifest to picket peaceably and in the respect and number stipulated, that the right of any further picketing whatever, heretofore accorded in the injunction order of May 28, 1952, in this cause and in causes numbers 38039, 38043 and 38066 and in the temporary orders of October 21, 1952, in causes numbers 38580 and 38582, is clearly forfeited and is therefore revoked, and that also in order to further clarify and simplify obedience to en-

forcement of and compliance with the protection which the injunction order was intended to provide, it is now ordered and the duty and obligation henceforth of all members, officers and organizers of the United Mine Workers of America to remain entirely out of the area and vicinity of these various plaintiffs' premises and all the surrounding highway approaches thereto and the corresponding duty and responsibility of the sheriff to effectuate all existing injunction orders as therein provided and herein modified.

It is also ordered that the United Mine Workers Union of the Misco Mine, its officers and members be made a party defendant in all said causes, by appropriate service upon its president Kelly King, who along with all other members now present are expected to acquaint and inform any and all such others, as are similarly interested and affected, with notice and knowledge of the foregoing restrictive order, and it would now seem to this Court, with the event and conclusion of this matter, its attendant publicity and the attending members, officers and organizers, a reasonable presumption that by not later than the beginning of working hours Monday, November 17, 1952, all or at least substantially all other members of the United Mine Workers of America will be fully aware and cognizant of the injunction order of May 28, 1952, as it exists effective as of now and govern themselves accordingly.

Journal Entries in said causes numbers 38039, 38043, 38066, 38580 and 38582 may be prepared by plaintiff counsel in each said cause and submitted to opposing counsel therein and then to the Court for its approval for filing, modifying former orders therein in accordance herewith, making the Misco Mine Union party defendant and causing service upon it.

It is the further view of the Court, pertinent to the issues hereof and the orders heretofore and herein made, that the enforcement arm of an Ohio county is not rendered impotent in the fact of a witnessed violation of an existing order of a Common Pleas Court, but, on the contrary, that the County ■ sheriff, to whom is entrusted the preservation of the peace, is empowered not only to repel and repress any attempted violation of such order but to arrest, detain and incarcerate such person or persons as persist in seeking to do so, informing the person or persons arrested of his authority and cause of the arrest.   (Sec. 13432-5 GC.)

The Court holds that the law of the case as enunciated by ■ a  common  pleas  court  is  as  much  a  part  of  the law of this state to be observed and enforced as is a state statute, or city or village ordinance, 'the language of §13432-1 GC using the general and generic term "law" and

not the word "statute" whose meaning is restricted to legislative law, and that this Court's said order herein may and should be maintained in the manner expressly accorded laws and ordinances. It ill becomes those of contemptuous behavior, toward whatever law, to complain that their contempt or violations cannot continue uninterruptedly merely because it is persistent and determined.

This Court, in the exercise of its equity powers and the authority inherent in its right to maintain order with respect to exacting compliance with an injunction order, would be derelict in its public duty if it did less than to insist upon the constitutional and legal right and obligation of its enforcement arm to effectuate its orders effectively.

The Sheriff and his deputies in acting under the direct and explicit order of the Court to exact compliance with its injunction decree thereby and in that respect represents the presence of the Court and any commission of violation in their presence is constructively in the Court's presence and may and will be hereafter dealt with and punished summarily.

If there is any risk entailed in the choice between abject submission of duly constituted county governmental authority to self-proclaimed outlawry and insistence upon full and effective performance of official duties in support of judicial determinations relied upon to protect and secure the freedom and liberty of law abiding citizens in going about their daily tasks, this Court prefers to err on the side of law and order, if any holdings of the Court should be deemed error.

It is the further intention of the Court to instruct the Grand Jury upon its reconvening next Tuesday, November 18th, to inquire into all questions of statutory law violation, beginning Wednesday morning November 19th, including assault and battery, malicious destruction of and taking motor vehicle without owner's consent, the latter penitentiary offenses, and to that end counsel for plaintiff are instructed to furnish the Prosecuting Attorney with the names and addresses of all witnesses essential for such investigation, for issuance of necessary subpoenas.

Upon the Court's conclusion that each of the defendants is guilty of contempt of the Court's permanent Injunction order herein of May 28, 1952, as found and determined from the evidence in this matter beyond a reasonable doubt, it is ordered and adjudged:

**1. That defendant United Mine Workers of America** pay a fine of Five Hundred Dollars ($500.00) for its violation of **October 23, 1952, and that it pay a fine of Five Hundred** Dollars ($500.00) for its violation of October 30, 1952.

2. That defendant District No. 6, United Mine Workers of America, pay a fine of Five Hundred Dollars ($500.00) for its violation of October 23, 1952, and that it pay a fine of Five Hundred Dollars ($500.00) for its violation of October 30, 1952, and the costs of this proceeding.

3. That defendant Adolph Pacifico, as President of District No. 6, United Mine Workers of America, be imprisoned in the jail of Muskingum County, for a period of ten (10) days for his violation of October 23, 1952, and that he be imprisoned in the jail of Muskingum County, for a period of ten (10) days for his violation of October 30, 1952, and that said terms be served consecutively; suspended only upon the express conditions hereinafter set forth as applicable to all other defendants similarly sentenced.

4. That defendant Walter Kovaleski pay a fine of Five Hundred Dollars ($500.00) and that he be imprisoned in the Muskingum County jail for a period of ten (10) days, for his violation of October 23, 1952 and that he pay a fine of Five Hundred Dollars ($500.00) and that he be imprisoned in the Muskingum County jail for a period of ten (10) days, for his violation of October 30, 1952, and that said terms be served consecutively; said terms suspended only upon the express conditions hereinafter set forth as applicable to all other defendants similarly sentenced.

5. That defendant Delvin Smith pay a fine of Five Hundred Dollars ($500.00) and that he be imprisoned in the Muskingum County jail for a period of ten (10) days, for his violation of October 23, 1952, said term suspended only upon the express conditions hereinafter set forth as applicable to all other defendants similarly sentenced.

6. That defendant George Headley pay a fine of Five Hundred Dollars ($500.00) and that he be imprisoned in the Muskingum County jail for a period of ten (10) days for his violation of October 23, 1952, said term suspended only upon the express conditions hereinafter set forth as applicable to all other defendants similarly sentenced.

7. That defendant Clem Wade pay a fine of Five Hundred Dollars ($500.00) and that he be imprisoned in the Muskingum County jail for a period of ten (10) days, for his violation of October 23, 1952, said term suspended only upon the express conditions hereinafter set forth as applicable to all other defendants similarly sentenced.

8. That defendant James Compton pay a fine of Five Hundred Dollars ($500.00) and that he be imprisoned in the Muskingum County jail for a period of ten (10) days, for his violation of October 23, 1952, said term suspended only upon the

express conditions hereinafter set forth as applicable to all other defendants similarly sentenced.

9. That defendant Chris Whitehead pay a fine of Five Hundred Dollars ($500.00) and that be imprisoned in the Muskingum County jail for a period of ten (10) days, for his violation of October 23, 1952, said term suspended only upon the express conditions hereinafter set forth as applicable to all other defendants similarly sentenced.

10. That defendant George Waters pay a fine of Five Hundred Dollars ($500.00) and that he be imprisoned in the Muskingum County jail for a period of ten (10) days, for his violation of October 23, 1952, and that he pay a fine of Five Hundred Dollars ($500.00) and that he be imprisoned in the Muskingum County jail for a period of ten (10) days, for his violation of October 30, 1952, and that said terms be served consecutively; said terms suspended only upon the express conditions hereinafter set forth as applicable to all other defendants similarly sentenced.

11. That defendant Steve George Kubic pay a fine of Five Hundred Dollars ($500.00) and that he be imprisoned in the Muskingum County jail for a period of ten (10) days for his violation of October 23, 1952, and that he pay a fine of Five Hundred Dollars ($500.00) and that he be imprisoned in the Muskingum County jail, for a period of ten (10) days, for his violation of October 30, 1952, and that said terms be served consecutively; said terms suspended only upon the express conditions hereinafter set forth as applicable to all other defendants similarly sentenced.

It is further ordered and adjudged that in the event of non-payment of any of the fines imposed against the defendants Walter Kovaleski, Delvin Smith, George Headley, Clem Wade, James Compton, Chris Whitehead, George Waters and Steve George Kubic, within the period of their respective term or terms of jail imprisonments, then such one or ones so in default therefor at and upon the expiration of the period of imprisonment imposed, then and thereupon stand committed to said Muskingum County jail until said fine or fines of any such defendant is paid, or until he is discharged according to law; and that in the event of the non-payment of either or both of the fines and costs imposed against defendant District No. 6, United Mine Workers of America, within the period of the jail imprisonment terms of defendant Adolph Pacifico, then at the expiration thereof, he, said defendant Adolph Pacifico, as President of District No. 6, United Mine Workers of America, then and thereupon stand committed to said Muskingum County jail until said latter fines and costs are paid, or he is discharged according to law.

All defendants, personally named, 1. Adolph Pacifico; 2. Walter Kovaleski; 3. Delvin Smith; 4. George Headley; 5. Clem Wade; 6. James Compton; 7. Chris Whitehead; 8. George Waters; 9. Steve George Kubic; will be remanded into the custody of the Sheriff for execution of their respective jail sentences, subject to release otherwise only upon the express conditions which follow; and said such suspensions of jail terms, as so conditioned, may become effective today only and otherwise are inoperative.

The first express condition for the suspension of any of said ten (10) day terms is that the total of all fines, aggregating Seventy-five Hundred Dollars ($7,500.00) and the costs of this proceeding be paid forthwith.

The further condition is that of the complete, implicit and unqualified observance of and obedience to all existing orders in all said six causes as herein and heretofore made and provided, on the part of all members, organizers, officers and officials of the United Mine Workers of America, faithful compliance with which the Court alone shall hereafter determine to its own independent satisfaction and without notice or further hearing as to whether or when it may consider such condition broken, where upon all sentenced defendants will merely be notified to report to the Sheriff for execution of sentences within twenty-four (24) hours or thereafter be subject to arrest and return for execution of sentence forthwith; and upon said defendants' personal assurances thereof in open court this date.

In the event of appeal upon and after written notice of intention to do so, appeal bond to stay execution of sentences is fixed in the sum of Two Thousand Dollars ($2,000.00) for each separate defendant, an aggregate amount for all of Twenty-two Thousand Dollars ($22,000.00) with sureties to the acceptance of the Clerk, and in the instance of each defendant conditioned that if judgment be given against it or him it or he will abide and perform the order or judgment.

Exceptions are saved and noted for and in behalf of each separate defendant with respect to each separate adverse ruling, holding, finding, determination, judgment and imposition of sentence, and to the Journal Entry and its contents generally.