UPPER LAKES SHIPPING, LTD., Plaintiff and Respondent, v.
SEAFARERS' INTERNATIONAL UNION OF CANADA and
others, Defendants : PEARL, Appellant.

*October 31—December 20, 1963.*

9

For the appellant there was a brief by *Jeknavorian, Ludwig & Shlimovitz,* and oral argument by *Herbert S. Bratt* and *Jack U. Shlimovitz,* all of Milwaukee.

For the respondent there was a brief by *Foley, Sammond & Lardner,* attorneys, and *Herbert P. Wiedemann* and *Eugene C. Daly* of counsel, all of Milwaukee, and oral argument by *Mr. Wiedemann.*

WILKIE, J.   A preliminary issue presented on this appeal is raised by appellant's contention that under the doctrine of federal pre-emption, the National Labor Relations Act renders invalid a temporary injunction issued by a Wisconsin court against picketing of foreign ships operated by foreign seamen.

In *Upper Lakes Shipping, Ltd., v. Seafarers' International Union, supra,* we held that the provisions of the National Labor Relations Act were not applicable to a dispute in which one party was a foreign shipping corporation, flying a foreign flag on its vessels, and employing crews composed entirely of foreign seamen.   We relied on *Benz v. Compania Naviera Hidalgo.*[4]   In that case, the United States supreme court held that the provisions of the National Labor Relations Act did not apply to a dispute involving picketing by striking foreign seamen of a foreign-owned ship, flying a foreign flag.

Two later United States supreme court cases buttress our previous ruling.

In *McCulloch v. Sociedad Nacional*[5] the supreme court rejected the "balancing of foreign and American contacts" rule of jurisdiction applied by the national labor relations board, and adopted the flat rule "that the jurisdictional provisions of the act [National Labor Management Relations Act] do not extend to maritime operations of foreign-flag ships employing alien seamen."[6]

---

[4] (1957), 353 U. S. 138, 77 Sup. Ct. 699, 1 L. Ed. (2d) 709.
[5] (1963), 372 U. S. 10, 83 Sup. Ct. 671, 9 L. Ed. (2d) 547.
[6] Ibid, p. 13.

In *Incres Steamship Co. v. Maritime Workers* [7] decided the same day, the court considered whether the National Labor Management Relations Act applied to a dispute involving recognition picketing of a foreign-flag ship employing alien seamen, by members of nonbargaining-unit unions —precisely the fact situation present in the instant case. The United States supreme court held, at page 26:

"We held today in *Sociedad Nacional* that the Act does not apply to foreign-registered ships employing alien seamen. The holding and reasoning in that case are equally applicable to the maritime operations here, leading to the conclusion that the Act does not apply."

It is clear that under the *Incres Steamship Co., Sociedad Nacional,* and *Benz Cases, supra,* because Upper Lakes Shipping, Ltd., flies a foreign flag on its vessels, and employs alien seamen exclusively, the provisions of the National Labor Relations Act do not apply to the instant case, and the state court had jurisdiction to issue the injunction and enforce its provisions.

The crucial question on this appeal is whether the absence of an affidavit as to the commission of misconduct on the part of Pearl as specified under sec. 295.04, Stats., produced to the court prior to the service of the attachment on Pearl, renders the attachment void and destroys the jurisdiction of the court to go ahead with the civil contempt proceeding.

Civil contempt proceedings are primarily remedial in that their main purpose is to enforce a judgment entered by a court as a result of the determination of private rights. There may be imprisonment. If so, "[t]he dominant character of the imprisonment is remedial and coercive, although a punitive effect may also result." [8] Where imprisonment is

---

[7] (1963), 372 U. S. 24, 83 Sup. Ct. 611, 9 L. Ed. (2d) 557.

[8] *State ex rel. Rodd v. Verage* (1922), 177 Wis. 295, 314, 187 N. W. 830.

ordered in a civil contempt proceeding following a finding that the contemnor has committed an act prohibited by the court's judgment, such imprisonment serves to deter the contemnor from repeating his misconduct when he is released. Civil contempt proceedings are not instituted for the primary purpose of punishment as are criminal contempt proceedings, although as the statutes [9] indicate, the same contempt may be punished under different procedures in civil or criminal proceedings.

In the instant case a judgment had been entered for the protection of Upper Lakes by enjoining specified acts of unlawful picketing. It is conceded that no affidavit was executed specifying the commission of any act of misconduct by Pearl either before the service of the attachment on Pearl or at any time prior to or during the hearing on the alleged contempt of April 23d. Neither were any interrogatories filed as called for by sec. 295.12, Stats., *supra*. Thus at the time of hearing, Pearl was not informed of the precise charges against him; neither had there been any showing prior to the hearing of any adverse effect caused to Upper Lakes by the alleged misconduct of Pearl.

Upper Lakes contends that even though there was no affidavit and there were no interrogatories, the court could proceed to judgment because the defendant admitted his guilt in open court and the requirement of interrogatories was suspended by that admission. We are satisfied that an inference arises from the record that he did admit to picketing an Upper Lakes ship. However, picketing these ships is not a violation of the 1962 injunction unless it is shown that the prohibitions applied to Pearl. Acknowledging that Pearl was not a member or agent of any of the named organizations, Upper Lakes argues that Pearl admitted to being a person "in active concert and participation with them."

---

[9] Chs. 256 and 295, Stats.

The basis for this proposition is the following colloquy between the court and Pearl:

"The Court: Let me read you this injunction again. '. . . and each of them and their agents, servants, employees and attorneys, and all persons in active concert and participation with them . . .' and so forth. *A.* Well, sir, I am not an attorney, and I don't presume to be able to qualify legal language, but the way it seems to me, that applies to—to the organizations listed in that—

"The Court: What about the part that says, '. . . all persons in active concert and participation with them. . . . ?' *A.* That also applies to their servants and the individuals, members of those particular organizations."

This is no more than an argument between the court and Pearl as to the legal meaning of the injunction. Pearl did not admit to his contempt.

The record contains no affirmative evidence to prove Pearl's relationship with the specifically enjoined parties nor of any adverse effect of the misconduct on the interests of Upper Lakes.

We conclude that the interrogatory requirements of sec. 295.12, Stats., *supra,* applied, and in their absence the defendant was not given notice of the charges against him and of necessity could not properly prepare and assert his defense.

There is still the question, however, of whether the defendant was properly before the court in the first instance where there was no affidavit filed before the service of the attachment.

As to this point, Upper Lakes argues that the contempt occurred "in the . . . presence of the court" justifying summary punishment under sec. 295.02, Stats.,[10] and excusing

[10] "295.02 SUMMARY PUNISHMENT. *When any such misconduct shall be committed in the immediate view and presence of the court it may be punished summarily by fine or imprisonment,* or both, as hereinafter provided. For that purpose an order must be made by

the filing of an affidavit (as specified under sec. 295.04, *supra*) prior to the service of the attachment on Pearl. Upper Lakes relies upon the Ohio case, *State ex rel. Bruns Coal Co. v. United Mine Workers of America:* [11]

"It is the further view of the court, pertinent to the issues hereof and the orders heretofore and herein made, that the enforcement arm of an Ohio county is not rendered impotent in the fact of a witnessed violation of an existing order of a Common Pleas Court, but on the contrary, that the County Sheriff, to whom is entrusted the preservation of the peace, is empowered not only to repel and repress any attempted violation of such order but to arrest, detain and incarcerate such person or persons as persist in seeking to do so, informing the person or persons arrested of his authority and cause of the arrest. G. C. Section 13432–5.

" . . .

"This court, in the exercise of its equity powers and the authority inherent in its right to maintain order with respect to exacting compliance with an injunction order, would be derelict in its public duty if it did less than to insist upon the constitutional and legal right and obligation of its enforcement arm to effectuate its orders effectively.

"The sheriff and his deputies in acting under the direct and explicit order of the Court to exact compliance with its injunction decree thereby and in that respect represents the presence of the Court and any commission of violation in their presence is constructively in the Court's presence and may and will be hereafter dealt with and punished summarily."

The Ohio procedure was exercised pursuant to the court's general equity powers. There was no precise statutory pro-

the court stating the facts which constituted the offense and bring the case within the provisions of this section, and particularly and specifically prescribe the punishment to be inflicted therefor." (Emphasis added.)

[11] (1952), 63 Ohio L. Abs. 531, 540, 110 N. E. (2d) 162, 169.

cedure as is set forth in ch. 295, Stats., governing the entire civil contempt procedures.

Although the power of a court to enforce its orders is inherent,[12] this does not mean the power is absolute and we have held that this power is inherent "subject to reasonable regulations by legislative power." [13]

Under sec. 295.02, Stats., summary punishment for civil contempt is permissible only if the conduct occurs in the presence of the court, and in the immediate view of the court. This provision requires the court, as a person, to directly observe the conduct at issue. Alleged misconduct committed in the presence of the deputy sheriff was not committed "in the immediate view and presence of the court." The rationale underlying summary punishment for contempt requires this construction of sec. 295.02. If the conduct occurs before the court, there is no need for further fact-finding. From his own direct observations the court possesses the necessary information to proceed to judgment. However, if the events occur outside his direct observation, fact-finding should follow the requirements of the adversary system. The party seeking the aid of the judicial process to reinforce his legal and economic position must present the information necessary for judgment to the court. The opposing party must be given an opportunity to test the moving party's propositions by cross-examination, and to offer proof supporting his contrary propositions. While the legislature could constitutionally combine the functions of prosecutor, judge, and jury in the court, even though some of the material propositions relating to the contempt occurred outside

[12] *State ex rel. Attorney General v. Circuit Court for Eau Claire County* (1897), 97 Wis. 1, 72 N. W. 193.

[13] *Jos. Schlitz Brewing Co. v. Washburn Brewing Asso.* (1904), 122 Wis. 515, 518, 100 N. W. 832.

of the view of the court,[14] the legislature has chosen to give full effect to the logic of the adversary system except in those situations in which the contumacious conduct occurs within the trial judge's direct observation.

Despite the fact that the alleged misconduct of the defendant did not occur in the presence of the court, the court's inherent power to protect its own decrees and the private rights attendant on those decrees is so great that the failure to receive the affidavit specified by sec. 295.04, Stats., prior to the service of the attachment, does not destroy the jurisdiction of the court and we hold that Pearl was properly before the court, but the faulty procedure of the court wherein (1) the affidavit was not filed prior to the commencement of the hearing on the charges against Pearl and (2) no interrogatories were filed against Pearl to which he could respond and the issues could be formulated as contemplated by sec. 295.12 was a denial of a proper hearing to Pearl and the order should be reversed and the cause remanded for further proceedings in order that Pearl can be given a chance to know the precise charges against him and the issues can be fully framed prior to the actual hearing which may or may not result in an adjudication of civil contempt as against Pearl.

*By the Court.*—Order reversed, and cause remanded for further proceedings not inconsistent with this opinion.

[14] *Nilva v. United States* (1957), 352 U. S. 385, 77 Sup. Ct. 431, 1 L. Ed. (2d) 415; *Green v. United States* (1958), 356 U. S. 165, 78 Sup. Ct. 632, 2 L. Ed. (2d) 672.