Alice V. HERRLEIN,
Plaintiff-Appellee,

v.

Thomas E. KANAKIS and Teklad,
Inc., Defendants,

The Mogul Corporation,
Nonparty-Appellant.

No. 75–1310.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1975.

Decided Nov. 25, 1975.

John A. Slevin, Peoria, Ill., Barry Springel, Cleveland, Ohio, for nonparty-appellant.

Wilbur D. Dersch, Peoria, Ill., Fred S. Lockwood, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, PELL and BAUER, Circuit Judges.

BAUER, Circuit Judge.

This case presents the crucial issue of whether a nonparty to an equity proceeding can be found in contempt for violating the court's injunction order.

I.

*The Herrlein-Kanakis Relationship*

On November 16, 1962 defendant Kanakis and Harry G. Herrlein, now deceased, entered into a royalty agreement by which Kanakis was given the right to manufacture animal food diets in accordance with various formulas developed by Herrlein and to sell such diets under certain trademarks. Upon Herrlein's death on December 23, 1962, his widow, Alice V. Herrlein, plaintiff, succeeded to his rights under the agreement. On January 2, 1963, Kanakis assigned his rights under the agreement to his wholly owned corporation, defendant Teklad, Inc. Effective November 16, 1967, the agreement was extended for an additional term and eventually expired on November 15, 1972.

*The Mogul Acquisition*

In the fall of 1972, prior to the termination of the royalty agreement, Mogul began negotiations with Kanakis for the acquisition of Teklad's assets. Pursuant to a purchase agreement dated January 18, 1973, Mogul acquired the assets of Teklad[1] and hired Kanakis to manage the assets. The purchase agreement expressly excluded the assumption by Mogul of any obligation or liability relating to any controversy of any kind or nature whatever between Teklad and/or Kanakis and Herrlein.

---

1. Mogul purchased all Teklad's assets except "the name, trademarks, copyrights and business of 'Little Friends'" (see Plaintiff's Exhibit 23). The "Little Friends" assets are unrelated to this litigation.

## The Herrlein-Kanakis Action

On February 20, 1973 Mrs. Herrlein commenced an action against Kanakis and Teklad seeking an injunction, damages and an accounting for breach of the agreement and for wrongful impairment of her rights to the formulas and trademarks. Mogul was never made a party to the action, was never served with a summons and never appeared before the district court in connection with the trial of the action. Subsequent to a non-jury trial, the district court, on February 4, 1974, entered a judgment for $150,000 in favor of Herrlein and ordered that an injunction be issued if the aforesaid amount were not paid. In reaching its decision, the district court concluded that the formulas constituted trade secrets of Herrlein.

Despite Herrlein's efforts, she was unable to locate Kanakis after entry of the judgment. Accordingly, on February 15, 1974 the district court entered an order enjoining:

> "the defendants, Thomas E. Kanakis and Teklad, Inc., their officers, agents, employees, servants and attorneys, and all persons in active concert or participation with them, including anyone claiming through or under defendants or either of them . . . from selling or advertising the dog, mouse/rat and guinea pig diets and rabbit ration as made and sold by defendants under the Rockland label prior to November 15, 1972 including colorable variations thereof under any label."

The injunction further provided that it would:

> "remain in full force and effect until such time as the plaintiff shall have been paid $150,000 . . . less any royalties paid for the period after November 15, 1972, together with interest, as provided in said Judgment.

At Herrlein's request, certified copies of the injunction were served upon Mogul on or before March 4, 1974.

## The Contempt Proceedings

On December 13, 1974 Herrlein obtained an order from the district court directing Mogul to appear at a hearing on January 17, 1975 to show cause why it should not be held in contempt for violating the injunction. On January 7, 1975 Mogul filed a motion to dissolve the show cause order, claiming the district court lacked personal jurisdiction over it. After dismissing this motion and considering evidence presented in the January 17, 1975 hearing, the district court found Mogul in contempt of the injunction order on January 28, 1975, and ordered Mogul to pay Herrlein $350 per day commencing as of March 4, 1974, the day Mogul was served with the injunction, or $150,000.[2]

Mogul asks us to overturn the contempt citation on several grounds: (1) the invalidity of the underlying injunction, (2) the lack of authority of the district court to enforce the injunction against Mogul, (3) the denial of a fair hearing to Mogul in the contempt proceeding, and (4) the absence of adequate evidence to support the issuance of the contempt citation and the granting of the monetary penalty. Since we conclude that the district court lacked the authority to enforce the injunction against Mogul, we need not consider Mogul's other arguments.

## II.

The general rule regarding a court's power to bind persons to an injunction was eloquently stated by Judge Learned Hand:

> "[N]o court can make a decree which will bind any one but a party; a court of equity is as much so limited as a court of law; it cannot lawfully enjoin the world at large, no matter how broadly it words its decree. If it assumes to do so, the decree is pro tanto brutum fulmen, and the persons enjoined are free to ignore it. It is not

2. The judge also ordered Mogul to reimburse Herrlein "for her costs and reasonable attorneys fees and expenses in connection with this contempt proceeding."

vested with sovereign powers to declare conduct unlawful; its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court. Thus, the only occasion when a person not a party may be punished, is when he has helped to bring about, not merely what the decree has forbidden, because it may have gone too far, but what it has power to forbid, an act of a party. This means that the respondent must either abet the defendant, or must be legally identified with him." *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832–33 (2d Cir. 1930).

This rule was codified in Rule 65(d) of the Federal Rules of Civil Procedure:

"Every order granting an injunction and every restraining order . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those parties in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

It is undisputed that Mogul received actual notice of the injunction order. The only question at issue is whether Mogul can properly be held in contempt for violating the injunction despite its not being a party to the litigation out of which the injunction arose.

### III.

Herrlein presents two theories under which Mogul may be bound by the injunction. First, the appellee argues that Mogul was "in active concert or participation" with the party defendants, within the meaning of Rule 65(d), in violating the injunction. Second, Herrlein argues that Mogul properly was bound despite it not being "in active concert and participation" with the party defendants under case law which expands the scope of persons bound beyond that in Rule 65(d).

### Rule 65(d)

Herrlein argues that Mogul was "in active concert or participation" with Kanakis and Teklad since it purchased Teklad with knowledge of Mrs. Herrlein's interest in the diet formulas and retained Kanakis to manage the former Teklad properties under Mogul's control.

This relationship between the parties named in the injunction and Mogul does not constitute "active concert or participation" under Rule 65(d). The cases interpreting the rule have held nonparties other than officers, agents, servants, employees, and attorneys of parties[3] liable under injunctions when the nonparty has aided or abetted a party in the violation of the injunction; *Reich v. United States,* 293 F.2d 134, 137 (1st Cir. 1956); see *Chase . National Bank v. Norwalk,* 291 U.S. 431, 436–37, 54 S.Ct. 475, 78 L.Ed. 894 (1934); *Alemite Mfg. Co. v. Staff, supra;* or under special circumstances when the nonparty was a successor in interest to the property subject to litigation. *Golden State Bottling Co., Inc., v. N. L. R. B.,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); *Regal Knitwear Co. v. N. L. R. B.,* 324 U.S. 9, 14–15, 65 S.Ct. 478, 89 L.Ed. 661 (1945); *Walling v. Reuter,* 321 U.S. 671, 64 S.Ct. 826, 88 L.Ed. 1001 (1944); *Computer Searching Corp. v. Ryan,* 434 F.2d 6, 9 (2d Cir. 1971).[4] Since neither Kanakis nor Teklad was found in violation of the order, Mogul cannot be held liable as an aider or abettor of the named parties in violating the injunction. *Garrigan v. United States,* 163 F. 16, 23 (7th Cir. 1908), *cert. denied,* 214 U.S. 514, 29 S.Ct. 696, 53 L.Ed. 1063 (1909); *Heyman v. Kline,* 444 F.2d 65, 66–67 (2d Cir. 1971); *United Pharmacal Corp. v. United States,* 306 F.2d 515, 517–18 (1st Cir. 1962). Likewise, Mogul cannot be found liable as a successor in interest. The cases holding successors in interest liable for violating injunctions against their predecessor in interest have only so held

---

**3.** Such persons are liable under the terms of Rule 65(d).

**4.** See Note, "Binding Nonparties to Injunction Decrees", 49 Minn.L.Rev. 719 (1965).

when the transfer was undertaken after the time the injunction order was imposed or the proscribed act was committed. See cases cited *supra*. The reason for these holdings is manifest: to allow a named party to avoid an injunction through the transfer of assets would provide an easy method of defying court orders. In the case at hand the transfer of assets from Kanakis/Teklad to Mogul occurred *before* the lawsuit against Kanakis and Teklad was initiated and thus could not have been undertaken to defy the court's order. Herrlein had the option at the time of the original action to bind Mogul to the injunction by simply joining Mogul as a party defendant.

### Expansion Beyond Rule 65(d)

Relying on the Fifth Circuit Court of Appeals decision in *United States v. Hall,* 472 F.2d 261 (1972), Herrlein argues that a party may be held in contempt for violating an injunction even though it was not in active concert or participation with parties to the underlying litigation under the court's inherent power to protect its ability to render a binding judgment.

In *Hall,* the prevailing plaintiff in a school desegregation case obtained an injunction from the district court forbidding anyone with notice of the injunction order from entering the grounds of the schools marked for desegregation. Hall was served a copy of the order but was not named as a party, did not participate in the injunction proceeding, and was not named in the order. Four days later Hall violated the order by entering the school grounds and was subsequently convicted of criminal contempt. The court of appeals upheld the conviction.

Despite some superficial similarities, we think the decision in *Hall* is distinguishable from the case at bar. The injunction issued there did not purport to adjudicate Hall's rights in the underlying desegregation suit. The subject matter of the injunction, the preservation of order in the schools, was distinct from the issues in the primary action. The injunction in *Hall* is akin to injunctions issued by courts binding on whomever has notice, prohibiting certain conduct within the area of courthouses. Such injunctions are valid exercises of the court's general supervisory powers to insure fair and impartial consideration of cases before them. This rationale, however, does not sustain the injunction issued by the district court here. In effect, this injunction adjudicated the merits of Mogul's property rights in the animal formulas, the subject matter of the underlying suit to which Mogul was not a party. The injunction was more than an order preserving the court's ability to render judgment in a case over which it had jurisdiction. *United States v. Hall, supra,* 472 F.2d at 265. A final judgment in the case had already been entered. The injunction was an attempt to obtain satisfaction of that judgment by binding a person not a party to the suit. This is antithetical to the primary axiom of our jurisprudence that no man shall be subject to judicial sanction without the opportunity for a hearing on the merits of the claim against him.

### IV.

Since Mogul was not added as a party to the original lawsuit and was subsequently not named in the injunction, we conclude that the court could not hold Mogul in contempt for violating the injunction and the court's order must be reversed.

Reversed.