DALTON, Plaintiff-Respondent, v. MEISTER, Defendant: UNIVERSAL TELEPHONE, INC., Appellant.

*No. 76–075. Argued May 3, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 326.)

For the appellant there were briefs by *E. Campion Kersten, Kevin M. O'Donnell,* and *Kersten & McKinnon* of Milwaukee, and oral argument by *E. Campion Kersten.*

For the respondent there was a brief by *Ward I. Richter* and *Bell, Blake & Metzner, S. C.,* of Madison, and oral argument by *Mr. Richter.*

CALLOW, J. This case arises out of the efforts of a judgment creditor, LeRoy Dalton, to recover on his judg-

ment against Howard J. Meister by levying upon some shares of corporate stock registered in the name of Mr. Meister. Mr. Dalton obtained an order restraining both Mr. Meister and the issuer of the stock, Universal Telephone, Inc. (UTI), a Delaware corporation, from transferring the stock until it was turned over to the sheriff. UTI was never made a party to the injunction proceedings, though it was served with a copy of the injunction itself. The only issue is whether UTI can be held in contempt for violating this injunction.

On December 29, 1969, LeRoy Dalton obtained a judgment in the amount of $151,749.98 against Howard Meister in a defamation action. [This judgment was affirmed in *Dalton v. Meister,* 52 Wis.2d 173, 188 N.W.2d 494 (1971)]. Almost one year later, on September 24, 1970, Mr. Dalton obtained an order to show cause in the defamation action why Mr. Meister should not be ordered to turn over to the sheriff certain shares of UTI stock.

The affidavit in support of the order to show cause alleged that an order enjoining Mr. Meister to turn over the stock is authorized by sec. 408.317 (2), Stats., a provision of the Uniform Commercial Code governing the attachment and levies upon investment securities; that executions upon the judgment have been returned unsatisfied; that a substantial number of the shares registered to Mr. Meister have since been transferred to a third party; and that, unless the court orders the UTI stock turned over to the sheriff immediately, Mr. Meister will attempt to dispose of the remainder of the stock to frustrate Mr. Dalton's recovery on the judgment.

At the hearing on the order to show cause, Dalton and Meister were represented, but UTI was not. Counsel for Mr. Dalton estimated the value of this stock in excess of $300,000. For reasons which it did not explain, the trial court concluded that it did not have power to direct the delivery of the shares of stock to the sheriff. Instead, the court enjoined Mr. Meister from transferring the stock, and upon Mr. Dalton's request, it also enjoined

UTI from transferring title to this stock on its stock books. The injunction was dated September 30, 1970, and was to remain in effect until further action by the court. The injunction decree was served on UTI.

On November 12, 1971, approximately fourteen months after the issuance of the injunction against UTI, UTI registered transfer of the shares of stock covered by the injunction to the American City Bank and Trust Company. On March 14, 1974, Mr. Dalton obtained an order to show cause why UTI should not be held in contempt for violating the injunction. UTI responded by filing a Notice of Special Appearance challenging the jurisdiction of the court to find it in contempt.

At the hearing on the contempt motion, Kenneth Baird, senior vice president of UTI, testified that on November 12, 1971, transfer of 26,747 shares of UTI stock was registered on the transfer books and a new certificate issued to the American City Bank and Trust Company. Mr. Baird testified that this transfer was made pursuant to a foreclosure agreement on June 20, 1971, between the American City Bank, the Continental Bank, UTI, and Mr. Meister and his family.[1] Mr. Dalton was given no notice of the agreement despite the fact that it purported to transfer the shares of stock covered by the injunction. Mr. Baird admitted that at the time Mr. Meister's shares of UTI stock were transferred on the stock books he was aware of the injunction, though he was never personally served with a copy of it; but because he believed the injunction was jurisdictionally defective and because he feared that UTI would be liable to American City Bank if it did not register transfer of the stock, he decided to transfer the stock in disregard of the injunction.

---

[1] Counsel for UTI explained that UTI believed that the shares transferred to American City Bank had been used as collateral to secure the multimillion dollar loans that American City made to Meister in August, 1969, before the Dalton judgement was entered and that American City's interest in the stock was superior to Dalton's.

The trial court concluded that it had the power to enjoin UTI from transferring the stock on its stock transfer books even though UTI was never made a party to the injunction proceedings. Accordingly, the court found UTI in contempt of court for transferring the stock in disregard of the injunction. UTI has brought this appeal.

Although the trial court found UTI in contempt, it postponed assessing damages pursuant to an agreement between the parties. The parties agreed to postpone the resolution of the damages issue until after deciding whether contempt was proper in the first instance because the issue of the damages sustained by Dalton as a result of the transfer of Meister's UTI stock to the American City Bank was also raised in an action pending before Hon. Robert J. Parins, Circuit Judge.

The action before Judge Parins was the subject of *Dalton v. Meister*, 71 Wis.2d 504, 239 N.W.2d 9 (1976). In that action Dalton sued Meister, members of the Meister family, the American City Bank, UTI, and others on a theory of fraud. In particular, Dalton alleged that, in anticipation of trial in the defamation action, Meister and the American City Bank, by means of a $2.5 million loan, conspired to "liquidate and secrete" assets upon which Dalton could have realized subsequent to the judgment; that Meister fraudulently induced his mother to loan him money, thus rendering her estate insolvent and depriving Dalton of access to that portion of the estate bequeathed to Meister in his mother's will; that Meister put title to some Hawaiian real estate in the hands of his attorney to defraud Dalton; that the June, 1971, agreement between Meister, the American City Bank, UTI, and others, which resulted in the transfer of the stock, was void as an invalid, voluntary assignment for the benefit of creditors; and that all the property covered by the agreement should be distributed ratably to all Meister's creditors. On appeal this court affirmed the

trial court's order overruling American City Bank's demurrer to the complaint. Thus the damages Mr. Dalton seeks on this contempt motion against UTI for transferring the stock he also seeks against UTI and others in the action pending before Judge Parins.

Besides this defamation action and the action between Dalton, Meister, and UTI described above, Dalton also commenced three garnishment actions against UTI as garnishee defendant in aid of execution on the judgment in this action. When Dalton moved by order to show cause to find UTI in contempt for violating the injunction, he filed the order to show cause in two of the garnishment actions. However, the injunction was issued in the defamation action. UTI filed a notice of special appearance containing the caption of the two garnishment actions as well as the caption of the defamation action. UTI contends that the defect in the caption of the motion for contempt makes the contempt proceedings void ab initio.

A contempt action should be initiated by an order to show cause and supporting affidavit in the same court in which the affiant established his rights. Sec. 295.03 (1), Stats. Normally, the order to show cause should be filed in the same action in which the order allegedly violated was filed. But as long as the court that adjudicated the rights on which the contempt motion is based hears the motion for contempt, the fact that faulty procedures are used to bring the contemnor before the court will not deprive the court of jurisdiction to award contempt. *Upper Lakes Shipping, Ltd. v. Seafarers' International Union of Canada,* 22 Wis.2d 7, 125 N.W.2d 324 (1963).

In this case, since Judge Parnell was presiding in the garnishment actions and the principal action, the order

to show cause bringing on the contempt motion was in fact heard by the same judge who issued the injunction allegedly violated. According to our approach in *Upper Lakes Shipping,* the use of the wrong caption should not make the contempt proceedings void. This result is particularly appropriate in this case where the judge treated the defect in the caption as merely one of form. At the commencement of the hearing, Judge Parnell stated that the title of the principal action as well as the title of the garnishment actions should appear in the proceedings. The court thus corrected the defect in the motion papers and proceeded to hear the merits of the order to show cause. Though UTI had initially made a special appearance, UTI did not further object. At the hearing UTI argued that the court had no jurisdiction to find UTI in contempt because UTI was never made a party to the injunction proceedings. At no time during the hearing did UTI object to the contempt proceedings on the specific ground that the order to show cause was miscaptioned and that this defect also deprived the court of jurisdiction to find UTI in contempt. As a result, the trial court was never asked to rule on whether the error in the caption made the proceedings void. This purely formal defect in the motion papers for contempt, which was waived below by UTI, is no basis for setting aside the order finding UTI in contempt. If the order of contempt is to be set aside, we must do so because UTI was never made a party to the injunction proceedings.

■

The Uniform Commercial Code, which governs the transfer of the investment securities that Mr. Dalton seeks to levy upon,[2] imposes a duty on an issuer to regis-

_____

[2] Article 8 of the Uniform Commercial Code has been enacted in essentially the same form in both Wisconsin and in Delaware, the state of incorporation of UTI. *See:* Del. Code tit. 6, sec. 8–101 et seq. (1975). Though the duties of UTI with respect to registration of transfer are governed by the law of Delaware, for pur-

ter transfer of a security if the security in registered form is presented to it with a request to register transfer, unless the issuer has actual notice of an adverse claim. Sec. 408.401, Stats. An adverse claimant has the option of obtaining a court order to prevent the registration of transfer of a security by the issuer. Sec. 408.403(2)(a), Stats. Where a security cannot be readily levied upon by ordinary legal process, a judgment creditor who seeks to reach a security registered to the judgment debtor may also obtain the assistance of the court "by injunction or otherwise." Sec. 408.317(2), Stats. Thus Mr. Dalton can enjoin the transfer by UTI of Mr. Meister's stock in order to protect his ability to execute on the judgment until the sheriff can take physical possession of the stock. The issue here is whether, in view of the failure to make UTI a party to the injunction proceedings, the injunction obtained pursuant to the code is binding on UTI.

Injunctions operate in personam and will not issue against one who is beyond the court's jurisdiction. *Gruhl Realty Company v. Groth,* 193 Wis. 108, 213 N.W. 657 (1927); *Zenith Corp. v. Hazeltine,* 395 U. S. 100, 110 (1969); *Alemite Manufacturing Corp. v. Staff,* 42 F.2d 832, 833 (2d Cir. 1930). It is undisputed that UTI was not a party to the defamation action, was not served with a copy of the order to show cause for the injunction, and had no opportunity to be heard at any time with regard to whether it should be enjoined from transferring the stock. The injunction was thus issued without obtaining personal jurisdiction over UTI.

There are some circumstances under which nonparties who have actual notice of the injunction have been held in contempt for violating it whether they are named in the

poses of this opinion we cite the Wisconsin version of the applicable sections of the Code. *See:* Sec. 408.106, Stats.

decree or not. At common law a decree of injunction not only bound parties defendant but also those identified with them in interest, in privity with them, represented by them, or subject to their control. *Regal Knitwear Company v. National Labor Relations Board,* 324 U.S. 9, 14 (1945) ; *In Re Lennon,* 166 U.S. 548 (1897). The common law rule has been expanded to bind persons in active concert or participation with a party to the decree. *See, e.g., Upper Lakes Shipping, Ltd. v. Seafarers' International Union of Canada, supra; See also:* Fed. R. Civ. P. 65(d). In addition, an injunction may bind nonparties who succeed in interest to property which is subject to litigation. *See, e.g., Golden State Bottling Co., Inc. v. National Labor Relations Board,* 414 U.S. 168 (1973). However, it is uniformly agreed that a court may not punish by contempt persons who violate an injunction by independent conduct and whose rights have not been adjudicated. *Chase National Bank v. Norwalk,* 291 U.S. 431, 437 (1934) ; *Herrlein v. Kanakis,* 526 F.2d 252, 255 (7th Cir. 1975) ; *Alemite Manufacturing Corp. v. Staff, supra* at 833. *See generally:* Rendleman, *Beyond Contempt: Obligors to Injunctions,* 53 Tex. L. Rev. 873 (1975).

■ The question of whether a nonparty is sufficiently identified in interest with a party to the decree or is acting in concert or aiding and abetting a party to the decree is a question of fact to be determined by the court. Though the court relied on cases in which such findings were made, the court made no such findings here. Instead, the court held that it had "inherent power" to enjoin UTI. The only cases which contain language that support the trial court's conclusion that it had "inherent power" to find UTI in contempt are this court's opinion in *Upper Lakes Shipping, Ltd. v. Seafarers' International Union of Canada, supra,* and the federal case of *United States v. Hall,* 472 F.2d 261 (5th Cir. 1972). In the

*Upper Lakes Case,* the contemnor, who violated an injunction against picketing, was not served with an affidavit or a set of interrogatories that were required for the commencement of the contempt action. The plaintiff sought to justify the imposition of contempt without meeting these requirements under the court's power to punish misconduct committed "in the immediate view and presence of the court." Since the picketing had not occurred in the courtroom, this court rejected the plaintiff's approach. Nonetheless, it held that "the court's inherent power to protect its own decrees and the private rights attendant on those decrees is so great that the failure to receive the affidavit . . . , prior to the service of the [body] attachment, does not destroy the jurisdiction of the court." 22 Wis.2d at 18. However, here the court merely stated that errors in the *contempt* procedure will not destroy the jurisdiction of the court. This holding does not mean that a court has inherent power to hold in contempt persons who are not bound to obey an injunction decree.

In the federal case *United States v. Hall, supra,* the federal court entered an order requiring a school board to balance the racial composition of two high schools and retained jurisdiction to enter further orders in the cause. At an ex parte session, the plaintiff in the desegregation suit obtained an injunction forbidding anyone with notice of the injunction from entering the grounds of the schools marked for desegregation. One Eric Hall willfully violated the order, though he was not a party to the injunction proceedings and was not named in the decree. Nonetheless, the court in *Hall* held that he was properly held in contempt because his conduct interfered with the court's power to make a binding adjudication between the parties properly before it.

The court in *Hall* observed that the district court had retained jurisdiction to enter further necessary orders and that Hall's disruptive conduct would not only

jeopardize the effect of the court's judgment already entered but would also undercut its power to enter binding desegregation orders in the future. *Id.* The court also observed that, since school desegregation orders excite strong community passions and are typically vulnerable to attack by an undefinable class of persons who are neither parties nor acting at the instigation of parties, broad contempt powers may be necessary to protect the court's ability to design appropriate remedies and to make their remedies effective. *Id.* at 266. The court in *Hall* noted that, since the violation of the injunction took place within four days of the issuance of the injunction itself, the court's injunction operated, in effect, like a temporary restraining order. The court accordingly concluded that: "the district court had the inherent power to protect its ability to render a binding judgment between the original parties to the [desegregation] litigation by issuing an interim ex parte order against an undefinable class of persons" and that "willful violation of that order by one having notice of it constitutes criminal contempt." *Id.* at 268.

*Hall* is the only case in which a nonparty has been held in contempt for violating an injunction based solely on the inherent power of a court to preserve its ability to render a final judgment. The particular circumstances of that case, which were crucial to the court's reasoning, are not present here. While in *Hall* the contemnor's violation of the order subverted the court's order requiring the plaintiff to desegregate the schools and frustrated the judicial process itself, here UTI's violation of the injunction not to transfer the stock had no effect upon the rights and duties adjudicated in the underlying defamation action. It merely affected the plaintiff's power to realize on his judgment by executing upon some of the property of the defendant. In *Hall* the court was faced with the possibility that its desegregation order would be frustrated by the conduct of an undefinable

class of community members and that it would be impossible to sue for an injunction against each one. But in this case UTI is the only issuer of the stock. Mr. Dalton's failure to make UTI a party was not the result of difficulty in predicting who might violate the injunction against the transfer of the stock but was the result of a decision at the hearing that restraining UTI would implement the type of relief that Mr. Dalton sought. Finally, in *Hall* the injunction, though permanent in form, was characterized as essentially an interim order, analogous to a temporary restraining order. In this case the injunction was in existence for over a year before it was violated. It did not operate as a temporary restraining order to preserve the status quo pending a resolution of the controversy involving the party restrained but rather as a permanent injunction against UTI's power to transfer the stock. We see substantial differences between this case and the *Hall Case.* We note the hesitation of other federal courts to apply *Hall* to circumstances other than the desegregation context, *Herrlein v. Kanakis, supra,* and therefore we do not consider it to be applicable here.

Although we believe that the trial court erroneously concluded that it had the inherent power to hold UTI in contempt, on the record before us, we believe that contempt may be proper. At the hearing it was shown that, after the injunction was served upon UTI but without notice to Mr. Dalton, UTI, Mr. Meister, and American City Bank and Trust Company agreed to a transfer of the stock which was the subject of the injunction.[3] As

---

[3] Where the issuer has notice of an adverse claim, the Uniform Commercial Code imposes a duty on the issuer [UTI] to notify an adverse claimant, such as Dalton, that a registration or transfer is about to take place. Sec. 408.403(2), Stats. Even if Dalton's injunction may not have bound UTI, it constituted notice of an adverse claim.

we have previously pointed out, a nonparty may be held in contempt for violating an injunction if he is in privity with a party or subject to his control if he is acting in concert with a party, or if he aids and abets a party in violating the injunction.

Though we cannot affirm the trial court's finding of contempt on the legal basis of inherent power, we believe that Mr. Dalton is entitled to a factual determination of whether UTI's transfer of the stock pursuant to this agreement was contemptuous under any of the theories enumerated above. We, therefore, set aside the order of contempt and remand the cause for further proceedings on whether UTI should be held in contempt.

*By the Court.*—Order reversed and cause remanded for proceedings not inconsistent with this opinion.

DAY, J., took no part.