IN the MATTER OF the FINDING OF CONTEMPT IN STATE V.
Paul KRUSE:

Roseann OLIVETO, Appellant-Petitioner,

v.

CIRCUIT COURT FOR CRAWFORD COUNTY, the Honorable
George S. Curry, Presiding, Respondent.

Supreme Court

*No. 93–1074. Oral argument April 25, 1995.—Decided June
28, 1995.*

(Also reported in 533 N.W.2d 819.)

418

For the appellant-petitioner there were briefs by *Mark Lukoff,* assistant state public defender and *Michael Tobin,* Director, Trial Division, state public defender and oral argument by *Mark Lukoff.*

For the respondent the cause was argued by *James H. McDermott,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

HEFFERNAN, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *Finding of Contempt in State v. Kruse,* 186 Wis. 2d 323, 519 N.W.2d 769 (Ct. App. 1994), which affirmed a judgment of the circuit court for Crawford County, George S. Curry, Circuit Judge. Assistant State Public Defender, Roseann Oliveto, seeks review of a court of appeals decision which affirmed the circuit court's summary finding that she was in contempt of court.

The issue presented on review is whether it was proper for the circuit court to use the summary contempt procedure as set forth in sec. 785.03(2), Stats.,[1] to find Attorney Roseann Oliveto (Oliveto), in contempt of court for uttering the word "ridiculous" to her client following the court's imposition of sentence and denial of her request to release the defendant on bail pending appeal. Under the facts of this case, we conclude that, although the circuit court was entitled to proceed summarily to find Oliveto in contempt, it was not entitled to then impose sanction without first providing Oliveto

---

[1] Section 785.03(2), Stats., provides:

SUMMARY PROCEDURE. The judge presiding in an action or proceeding may impose a punitive sanction upon a person who commits a contempt of court in the actual presence of the court. The judge shall impose the punitive sanction immediately after the contempt of court and only for the purpose of preserving order in the court and protecting the authority and dignity of the court.

423

with her right to allocution. Accordingly, we reverse the decision of the court of appeals.[2]

## I.

The circumstances of the alleged contempt are a matter of record. On February 26, 1993, Roseann Oliveto, in her capacity as an assistant public defender, was present in Crawford County circuit court with her client, defendant Paul Kruse, at his sentencing hearing before Judge Curry. Following oral arguments by counsel and after the defendant had exercised his right of allocution, Judge Curry sentenced Kruse, on his conviction for bail jumping, to the Division of Intensive Sanctions for two years, with nine months confinement and other conditions. After sentence was imposed, Oliveto asked the court to release the defendant on bail pending appeal. The request was denied. Thereafter, the following record was made:

> Ms. Oliveto: So he is to start his sentence today?
>
> The Court: That's right.
>
> (A discussion was held off the record.)
>
> The Court: Did I hear you say ridiculous, Attorney Oliveto?
>
> Ms. Oliveto: Yes, I did, Your Honor.
>
> The Court: It seems to me that—make the record reflect that the attorney for the Defendant, in open court to her client, indicated that she thought the Court's sentence was ridiculous.

---

[2] Ordinarily, although we would remand the cause to provide the contemnor with the right of allocution, we do not do so here because we reverse the court of appeals' decision and relieve Oliveto of the sanction imposed.

Ms. Oliveto: That's not exactly what I said, Your Honor. I didn't say that entire thing.

The Court: Well, exactly what did you say then?

Ms. Oliveto: I just said "ridiculous." That's the only word I said, Your Honor.

The Court: Well, it certainly indicated to the Court contempt for the Court's sentence, and the Court will find that the defense counsel is in contempt of court and fine her $250. Pay that immediately.

Ms. Oliveto: Can I be allowed to go outside to get my—

The Court: You can go pay it right now at the clerk of court's office.

Ms. Oliveto: My purse is in my car.

The Court: Go to your purse and bring it in and pay it. Twenty years of practicing law and being on the bench I have never heard a defense attorney sit around and call the Court's sentence ridiculous in the courtroom.

The Court thought the Court was being somewhat generous in view of the recommendations from the Probation Department. It was a three-year sentence with one year in jail, and in view of Mr. "Mellem's" [sic] past behavior, irresponsible behavior and conduct and the presentence report's negative factors all taken in part, the Court felt that a compromise between what the prosecution was asking for and what the defense was asking for was a reasonable sentence, and certainly finds that the comment of the defense attorney was unreasonable, unprofessional and contemptuous of the Court and will report this to the State Bar of Professional Responsibility. Prepare a transcript and send it.

On April 19, 1993, six weeks after the summary contempt proceeding, Judge Curry filed Written Findings of Fact, Conclusion of Law, and Judgment of Contempt. We summarize his findings of fact as follows: Attorney Oliveto's comment was made immediately after sentence had been imposed while court was in session; Oliveto "turned her head . . . towards the defendant and in an aside to him angrily denounced the court's decision as ridiculous"; the comment was audible in the courtroom; court officers, other attorneys, parties, criminal defendants and spectators were present in the courtroom; the comment was "clearly and unequivocally intended to lower the defendant's respect for the court's judgment . . . ."; a summary contempt proceeding was held immediately after the comment was made; Attorney Oliveto was afforded the right of allocution; the allocution offered no explanation or apology to the court; Attorney Oliveto's comment, made in the actual presence of the court, interfered with the administration of justice and impaired the respect due the court.

The court of appeals, in a split decision, affirmed the circuit court's judgment of contempt, holding that (1) the summary contempt procedure was appropriate; (2) the contemnor had sufficient notice that the court was instituting summary contempt proceedings when the court asked if she uttered the word, "ridiculous;" (3) the utterance is not protected by the attorney-client privilege; and (4) the contemnor was not denied her right of allocution. We granted Oliveto's petition for review.

## II.

Oliveto raises several arguments which we consider in turn: (1) merely uttering the word

"ridiculous"—alone and without context, is not a sanctionable contempt of court; (2) assuming the utterance is contemptuous, the instant facts warrant the non-summary, rather than the summary, procedure; and (3) Oliveto was not afforded her right of allocution.[3]

## Sanctionable Contempt

Oliveto argues that uttering the word "ridiculous" in an aside to her client could not constitute contempt because: (1) "the mere utterance of a [single] word is not sufficient to support a contempt finding," *Oliveto's Brief* at 13; and (2) because the word "ridiculous" is frequently used in legal opinions.

The question of whether or not an act or remark is a contempt of court is one which the circuit court has far better opportunity to determine than the reviewing court. *Currie v. Schwalbach,* 132 Wis. 2d 29, 36, 390 N.W.2d 575 (Ct. App. 1986) (*citing Schroeder v. Schroeder,* 100 Wis. 2d 625, 640, 302 N.W.2d 475, 483 (1981).

---

[3] Oliveto also argues that the utterance was a privileged attorney-client communication. We do not separately address this argument because we agree with the court of appeals that the attorney-client privilege set forth in sec. 905.03, Stats., may be claimed "only on behalf of the client" and that is not the case here.

Further we point out that whether or not Oliveto intended Judge Curry to hear her remark is irrelevant. A similar argument was rejected in *Currie v. Schwalbach:*

> In the context of a contempt proceeding, willfulness is defined as a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful. (Citation omitted.)

*Curry v. Schwalbach,* 132 Wis. 2d 29, 39, 390 N.W.2d 575 (Ct. App. 1986). Because Oliveto's utterance was volitional, it is deemed intentional.

A trial court's finding that a person has committed a contempt of court will not be reversed by a reviewing court unless the finding is clearly erroneous. *Id.*

The statutory definition of contempt of court is clear: "Contempt of court means intentional: (a) Misconduct in the presence of the court which interferes with a court proceeding or with the administration of justice, or which impairs the respect due the court," sec. 785.01(1)(a), Stats. According to this definition, misconduct in the presence of the court, which impairs the respect due the court, is a "contempt of court." In this case, Judge Curry found that Oliveto's comment was "clearly and unequivocally intended to lower the defendant's respect for the court's judgment" and that it impaired the respect due the court. We think these findings are reasonably supported by the record.

Further, the arguments Oliveto raises in defense of her conduct—that a single word cannot constitute contempt or that the word she uttered is frequently used in legal opinions—miss the point. The utterance of even a single word, depending upon the context and the manner of delivery, has the potential to be disruptive, rude and offensive. We think Oliveto's remark, uttered, as it was after the court imposed sentence and denied her request to release the defendant on bail pending appeal, was disruptive, rude and offensive. And, contrary to Oliveto's assertion, the fact that this particular word may be inoffensively used in myriad of other contexts including legal opinions, is not relevant to the only context of concern here, the courtroom. Nor is the fact that the word "ridiculous" is not pejorative per se, render it incapable of constituting sanctionable contempt when uttered, as it was here, in response to the sentence imposed by the court. Given the context

and the manner of Oliveto's delivery, an observation made by the court in *Contempt in State v. Dewerth,* 139 Wis. 2d 544, 557, 407 N.W.2d 862 (1987), bears repeating: ."It is common knowledge that gratuitous, out-of-turn, berating, threatening, and derogatory comments are not permitted in the course of court proceedings."

As an officer of the court, Oliveto's courtroom demeanor should be above reproach. Lawyers should, by their conduct, set an example for others to follow. The *Rules For Professional Conduct For Attorneys* provide that a lawyer shall not "engage in conduct intended to disrupt a tribunal." SCR Rule 20:3.5(c). The Comment to this Rule provides in part: "An advocate can present the cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics." We recite the rule and the comment to remind lawyers of their obligation to maintain decorum in the courtroom. Had Oliveto respectfully addressed the court she might have made a record concerning the defendant's sentence consistent with her obligations to maintain decorum and to preserve the integrity of the court.

### The "Actual Presence" Requirement

Whether the circuit court proceeded under the proper provision of the contempt statute is a question of statutory construction which is a question of law that we review de novo. *Contempt in State v. Dewerth,* 139 Wis. 2d 544, 552, 407 N.W.2d 862 (1987).

This court has construed sec. 785.03(2), Stats., to provide that the summary procedure may only be used if the following requirements are met: "(1) The contumacious. act must have been committed in the actual

presence of the court; (2) the sanction must be imposed for the purpose of preserving order in court; (3) the sanction must be imposed for the purpose of protecting the authority and dignity of the court; and (4) the sanction must be imposed immediately after the contempt." *See Gower v. Marinette County Circ. Court,* 154 Wis. 2d 1, 10–11, 452 N.W.2d 355 (1990) *(citing Contempt in State v. Dewerth,* 139 Wis. 2d 544, 552, 407 N.W.2d 862 (1987)).

Oliveto contends that if contempt is warranted, Judge Curry should have used the nonsummary, rather than the summary, contempt procedure, available under sec. 785.03, Stats., because her utterance occurred after the proceeding had concluded, e.g., the alleged contumacious act did not occur in the "actual presence" of the court but only after sentence was imposed, and because the sanction was not necessary to preserve order in the courtroom. The state contends that the utterance was made in the presence of the court and that it interfered with the administration of justice by "introducing a rude, jarring and disruptive note into what had been . . . a decorous judicial proceeding." *State's Brief* at 12. The state further contends that, in light of the disjunctive standard set forth in sec. 785.01, Stats.,[4] the summary procedure is appropriate even when there is no interference with the administration of justice per se.

The instant record reveals that Oliveto's comment was made immediately after the judge, having imposed sentence on the defendant, denied counsel's request for

---

[4] Section 785.01(1)(a), Stats., provides:

(1) "Contempt of court" means intentional:

(a) Misconduct in the presence of the court which interferes with a court proceeding or with the administration of justice, or which impairs the respect due the court;

release on bail pending appeal. At the time the comment was made, Judge Curry was on the bench, the court reporter was present and transcribed the ensuing colloquy between the judge and Oliveto, and the parties were present at counsel table. These circumstances indicate "actual presence."

In our most recent decision on point, *Gower v. Marinette County Circ. Court,* 154 Wis. 2d 1, 12, 452 N.W.2d 355 (1990) (*citing Dewerth,* 139 Wis. 2d at 552–53 & n.4, 407 N.W.2d 862), we held that the actual presence requirement is satisfied when the contumacious act occurs during formal court proceedings. In so holding, we did not say that actual presence could not be satisfied unless the contumacious act or remark occurs during formal court proceedings. Rather, we indicated that actual presence may be satisfied when, as here, the act prompting the judge to act summarily, "has occurred under the eye of the court and the contemnor is present." *Dewerth,* 139 Wis. 2d at 560–61 *citing Groppi v. Leslie,* 404 U.S. 496, 504–05 (1972). In this setting, the judge has seen the offense and is acting on the basis of personal observations. *Id.* at 561.

The concept of courtroom decorum would be meaningless indeed, if we were to accept the premise that summary contempt cannot occur once the business of the court in its narrowest sense, here the imposition of sentence, is concluded. Accordingly, we reject Oliveto's assertion that the actual presence requirement was not satisfied simply because the judge had already imposed sentence. Further, we conclude that actual presence must be determined in light of the factual setting surrounding the contumacious conduct. Here, Oliveto's remark was made in the presence of the judge, the court reporter, the presumptive presence of the clerk of

the court, and in the presence of opposing counsel. As a matter of law, we hold that a contumacious act or remark made in this setting satisfies the statutory actual presence requirement. We note as an additional fact that Judge Curry had not adjourned the proceedings, and therefore, contrary to Oliveto's assertion, formal court proceedings had not yet, concluded.

### The "Preserving Order Requirement"

Oliveto next argues that the summary procedure was inappropriate because the sanction imposed was not necessary to preserve order in the courtroom. To the extent that this court must engage in an interpretation of the language of the summary contempt statute, it is confronted with a question of law which we review de novo. *Contempt in State v. Dewerth,* 139 Wis. 2d 544, 552, 407 N.W.2d 862.

This court has construed the "preserving order" requirement to include even a single contumacious act or remark, which, irrespective of its content or purpose, is disruptive of courtroom order. *Dewerth,* 139 Wis. 2d at 555. In *Dewerth,* we expressly rejected the notion that preserving order required an ongoing state of disorder. *Id.* Rather, we said, "[i]t is the intent, content, and effect of the contumacious behavior, not its frequency, that is relevant." *Id.* We further stated that, "[t]he content or substance of a single contumacious action or remark may be more disruptive than behavior which, irrespective of its content or purpose, disrupts intermittently because it is repetitive." *Id.*

The contumacious remark alleged here was a single utterance which did not constitute an ongoing disorder. Judge Curry found that "immediately at the

conclusion of the sentencing process and while court was in session . . . Oliveto turned . . . towards the defendant and . . . angrily denounced the court's decision as ridiculous" and that "Oliveto's actions, demeanor and statement were visible perceptible and audible in the courtroom." These findings and the further finding that Oliveto's demeanor and remark were contemptuous of the court, indicate that in Judge Curry's view, the remark was disruptive and that it impaired the respect due the court. We conclude that a disruptive remark which denigrates and impairs the respect due the court, and which is uttered, as here, in the presence of the court, satisfies the "preserving order" requirement, which, as we have previously held, requires no ongoing disturbance per se.[5] *Id.*

### The Right of Allocution

Standard 6–4.4 of the American Bar Association Standards for Criminal Justice recommends that "[b]efore imposing any punishment for criminal contempt, the judge should give the offender . . . at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment."

In *Contempt in State v. Dewerth,* 139 Wis. 2d 544, 407 N.W.2d 862 (1987), we held that because the summary procedure involves imposition of a punitive sanction, "a contemnor should have the opportunity, similar to a criminal defendant, for allocution before

---

[5] At oral argument Oliveto conceded that if the "actual presence" requirement is met, then a contemptuous comment would per se, meet the preserving order and protecting the dignity of the court requirements. Oliveto did not, however, concede that her remark was contemptuous; rather, she described the word ridiculous as "mild."

punitive sanctions are imposed." *Id.* at 560. In that case we observed:

> The requirement of an allocution comports with both the analogous statutory requirement that convicted criminal defendants be permitted to make a statement before being sentenced and with general due process concepts of fundamental fairness. As other courts have recognized, the allocution requirement provides a check on the heightened potential for abuse posed by the summary contempt power and provides an opportunity for the contemnor to apologize or to defend or explain the contumacious behavior.

*Id.* at 565.

Oliveto argues that a reasonable attorney in her position, would not have known that her utterance warranted summary contempt proceedings, and that Judge Curry failed to provide her with adequate notice that he was instituting summary contempt proceedings. Although we disagree with these assertions because common sense, alone, suggests the impropriety of counsel's remark, examination of the record nonetheless compels the further conclusion that Judge Curry failed to provide Oliveto with her right of allocution. The relevant portion of the transcript reads as follows:

> THE COURT: Did I hear you say ridiculous, Attorney Oliveto?
>
> MS. OLIVETO: Yes, I did, Your Honor.
>
> THE COURT: It seems to me that—make the record reflect that the attorney for the Defendant,

in open court to her client, indicated that she thought the Court's sentence was ridiculous.

MS OLIVETO: That's not exactly what I said, Your Honor. I didn't say that entire thing.

THE COURT: Well, exactly what did you say then?

MS. OLIVETO: I just said 'ridiculous.' That's the only word I said, Your Honor.

THE COURT: Well, it certainly indicated to the Court contempt for the Court's sentence, and the Court will find that the defense counsel is in contempt of court and fine her $250. Pay that immediately.

According to the State, this portion of the transcript demonstrates that Oliveto had adequate warning that Judge Curry intended to institute summary contempt proceedings, and, that she was in fact, afforded her right of allocution. We disagree.

This court has previously held that in the context of a summary contempt proceeding, the contemnor must be afforded a right of allocution. *Contempt in State v. Dewerth,* 139 Wis. 2d at 565. The right is so basic that it will not be inferred from the record. The right must be exercised after the court has made its finding of contempt but before punishment is imposed, thereby permitting the judge to vacate the contempt order entirely or to give a more lenient sanction, after considering any mitigating factors revealed in the allocution. The judge's findings of fact should be made on the record, contemporaneous with the summary contempt procedure. Due process and concepts of fundamental fairness are satisfied when the record following a summary contempt proceeding demonstrates

all of the following: (1) a statement indicating the judge's decision to hold a person in contempt as well as the factual basis for the holding; (2) a statement from the judge informing the contemnor of the right of allocution and a further statement inviting the contemnor to exercise that right prior to imposition of sanction; and (3) the judge's final decision to impose sanction and the sanction, if any, is imposed.

Contrary to the state's assertion, the allocution requirement is not satisfied when the judge, as here, requests the alleged contemnor to clarify, repeat or explain the contumacious act or remark. Rather, as we pointed out in *Contempt in State v. Dewerth,* the allocution requirement essentially provides a check on the heightened potential for abuse posed by the summary contempt power by providing an opportunity for the contemnor to apologize or to defend or explain the contumacious behavior. *Id.* at 565. The opportunity to apologize, defend or explain that we require, allows the contemnor to speak in mitigation of the misconduct which the court has already determined.

We emphasize that our purpose here is twofold: to remind attorneys of their obligation to preserve the integrity of the court and to remind the bench that, when the summary contempt procedure is used, the contemnor must be afforded a right of allocution. For the reasons set forth, we conclude that, although the facts reveal contumacious behavior properly subject to the summary procedure set forth in sec. 785.03(2) Stats., the right of allocution is so fundamental that the whole summary procedure must be set aside for failure to afford allocution. Accordingly, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* Although I agree with the mandate of the court, I write separately to emphasize that courts may invoke the summary contempt procedure only when compelling circumstances require immediate punishment. The record in this case is equivocal regarding whether a compelling reason existed for *immediately* punishing Oliveto.

According to sec. 785.03(2), Stats., 1991–92, the summary contempt procedure is intended solely to preserve order in the court and to protect the authority and dignity of the court. The history of the statute indicates that the legislature intended the statute to balance a court's need to achieve summary vindication of its dignity and authority with the due process rights of a person faced with punitive sanctions. Judicial Council Committee Note (2)–1979, sec. 785.03, Wis. Stats. Ann. (1981). The legislature chose to make the summary procedure available only in "very limited" circumstances, to protect the due process rights of a contemnor and guard against the courts' possible abuse of the contempt power. Judicial Council Committee Note (2)–1979, sec. 785.03 Wis. Stats. Ann. (1981).

To protect a contemnor's due process rights, "there must be a compelling reason for immediate punishment related to 'vindication of the court's dignity and authority.' " *State v. Van Laarhoven,* 90 Wis. 2d 67, 70–71, 279 N.W.2d 488 (1979) (quoting *Harris v. United States,* 382 U.S. 162, 166 (1965)). Otherwise, contempt is punishable only after the alleged contem-

437

nor is notified of the contempt charge and afforded a hearing on the allegations. *Harris,* 382 U.S. at 166.

For the reasons set forth, I concur in the mandate.