Shabretta EVANS, Adrianna Dupar, and LaQuanda Dupar, Plaintiffs-Respondents,†

Gwendolyn EVANS, Plaintiff,

Theodore HODAN, Successor Guardian ad Litem, Respondent,

v.

Daniel C. LUEBKE and American Family Insurance Group, Defendants,

Hazel J. WASHINGTON, Appellant.
[Case No. 02–2210.]

Miracle REED, Plaintiff-Respondent,†

Cherry REED, Plaintiff,

Theodore HODAN, Successor Guardian ad Litem, Respondent,

v.

Daniel C. LUEBKE and American Family Insurance Group, Defendants,

Hazel J. WASHINGTON, Appellant.
[Case No. 02–2211.]

Court of Appeals

*Nos. 02–2210, 02–2211. Submitted on briefs April 10, 2003.— Decided September 25, 2003.*

† Petition to review denied 1-23-04.

## 2003 WI App 207

(Also reported in 671 N.W.2d 304.)

On behalf of the appellant, the cause was submitted on the briefs of *Mark E. Sanders* and *Julie Ann Neuhaus* of *Halling & Cayo, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joseph T. Ganzer* and *Theodore J. Hodan* of *Hodan, Doster & Ganzer, S.C.*, Milwaukee.

Before Deininger, P.J., Dykman and Vergeront, JJ.

¶ 1. DEININGER, P.J. Attorney Hazel Washington appeals money judgments entered against her in favor of each of four minors whose interests she represented as guardian ad litem with respect to personal injury settlements. She also appeals two related judgments in favor of the children's successor guardian ad litem, Theodore Hodan, for his fees in obtaining the judgments for the recovery of the minors' settlement funds. Finally, Washington challenges orders that vacated provisions in the original minors' settlement orders that approved her claims for attorney fees for representing the minors in the underlying personal injury claims.[1]

---

[1] Washington represented three minors, who are the daughter and foster daughters of Gwendolyn Evans, in a personal injury action against Daniel Luebke and his insurer, American Family Insurance Group. She also represented the minor daughter of Cherry Reed in a separate action against the same defendants. She appeals virtually identical judgments and orders entered in the two cases, and accordingly, we ordered the two appeals consolidated. Luebke and American Family are not

¶ 2. Washington claims the circuit court erred in entering the judgments and orders against her because: (1) she is immune from liability for professional negligence while serving as a guardian ad litem; (2) the circuit court lacked jurisdiction over her; (3) the circuit court violated her right to due process; (4) the minors suffered no damages because the money removed from their bank accounts was used for their benefit; (5) the circuit court failed to make factual findings; (6) the circuit court failed to identify a basis for vacating its prior approval of her attorney fees for representing the minors; and (7) the circuit court lacked authority to order her to pay the successor guardian ad litem's attorney fees.

¶ 3. We conclude that the circuit court had the authority to sanction Washington for contempt if she in fact disobeyed a court order. We also conclude, however, that the circuit court violated Washington's right to due process when it failed to conduct an evidentiary hearing or make findings of fact before entering the appealed judgments against her. We further find no basis in the present record for the circuit court's action in vacating its earlier approval of Washington's fees for procuring the personal injury settlements for the four minors. Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

¶ 4. Washington negotiated settlements on behalf of four minors injured in an automobile accident. She was then appointed the minors' guardian ad litem for the purpose of obtaining court approval of the settle-

affected by the appealed orders and neither they nor the two mothers have participated in this appeal.

ments. The circuit court approved the settlements as well as Washington's attorney fees for services she provided in pursuing the personal injury claims. The circuit court also ordered that Washington's attorney fees and various subrogated claims be paid out of the settlements. The remaining balances were ordered to be placed "in a restrictive trust at any bank, savings and loan institution or like institution; said account is to be restricted in that funds shall not be withdrawn from said account until the minor child . . . reaches the age of 18 or by court order."

¶ 5.　Shortly thereafter, the circuit court learned that the money was not placed in restricted accounts and that the balances had been partially or completely withdrawn. The circuit court scheduled at least two status conferences with Washington and the minors' mothers but much of what occurred at them was not reported. Washington informed the court at the second conference that the minors' mothers had withdrawn the funds to purchase clothing and blankets for the children. The circuit court declined to take testimony from the mothers and said that it would refer the matter to the district attorney's office and appoint a referee to further investigate the matter, but the record does not reflect whether either step was taken. The next day, however, the circuit court appointed Hodan to replace Washington as guardian ad litem for the four minors.

¶ 6.　Hodan filed motions on behalf of all four minors requesting the circuit court to order Washington to personally repay the depleted settlement funds. He also requested the court to vacate the order approving Washington's attorney fees from the settlement and order her to pay Hodan's fees for pursuing recoupment of the funds on behalf of the minors. At an off-record status conference, the circuit court apparently granted

Hodan's motions but stayed execution of them in order to allow Washington the opportunity to file written objections.

¶ 7. Washington filed objections and another status conference was held, only a portion of which was reported. The transcript reflects that the circuit court granted Hodan's motion only with regard to ordering Washington to repay the missing settlement funds.[2] When Washington did not reinstate the accounts by the prescribed deadline for doing so, Hodan moved for judgments against Washington. The circuit court granted Hodan's motions in their entirety and entered judgments against Washington for the original balances in the minors' accounts, plus interest, and for the guardian ad litem fees submitted by Hodan. The court also vacated its prior approval of the payment of attorney fees to Washington from the personal injury settlements she obtained for the minors.

¶ 8. Washington moved for reconsideration and, alternatively, for a stay of the judgments pending appeal. Washington argued that the court had violated her due process rights when it: (1) allowed Hodan to

---

[2] The court also apparently discussed with the two attorneys Washington's request for a court order allowing her to file suit against the minors' mothers for reimbursement of any funds that Washington was ordered to deposit in the minors' accounts. Although the record is not entirely clear on the matter, Washington appears to have agreed to replenish the bank accounts if the circuit court would sign an order authorizing her to proceed against the mothers for reimbursement. After this status conference, Washington drafted and submitted a proposed order to this effect. Hodan objected to a portion of the proposed order and the circuit court did not sign it. Washington then filed a motion seeking entry of a similar order, but the court denied it on grounds that it had no authority to grant Washington the right to proceed with a new lawsuit.

pursue claims against her without filing a separate negligence action; (2) improperly vacated the court's prior approval of attorney fees she had earned; and (3) ordered her to pay Hodan's guardian ad litem fees in violation of the "American Rule." Washington also argued that the circuit court lacked jurisdiction over her; that she was entitled to quasi-judicial immunity while acting as guardian ad litem; and that, because the settlement funds were used to purchase items benefiting the children, they suffered no harm. The circuit court declined to vacate or modify the judgments and order, but did stay enforcement of them pending this appeal.[3]

## ANALYSIS

██

¶ 9. Washington and Hodan advance starkly different characterizations of what the circuit court did in this case. Washington claims that the sanctions imposed on her were the end product of an improperly commenced negligence action and that the court abrogated her quasi-judicial immunity from liability for actions taken while serving as a guardian ad litem. Hodan views the circuit court as simply exercising its authority under Wis. Stat. § 805.03 to impose sanctions

---

[3] Circuit Judge Michael D. Guolee heard Washington's motions for reconsideration or stay, apparently because Judge William Haese, who entered the appealed judgments, had retired. In ruling on Washington's motions, Judge Guolee expressed strong reservations regarding the lack of due process or factual findings to support the sanctions imposed on Washington. He concluded, however, that as a court of "concurrent jurisdiction" he should not set aside or alter Judge Haese's orders, choosing instead to stay them to permit Washington to pursue her claims of error in this court.

for violations of its orders. Thus, although the parties frame the issues on appeal quite differently, the principal questions before us are whether the circuit court possessed the authority to impose the sanctions it did on Washington for her purported failure to obey a court order, and, if so, whether it followed proper procedure in doing so. We conclude that the answer to the first question is yes and to the second, no.

¶ 10. Although we agree with Hodan that the circuit court possessed the authority to sanction Washington for what it deemed her failure to follow its order regarding the disposition of the minors' funds, we do not agree that this authority necessarily derives from WIS. STAT. § 805.03. We conclude that a firmer grounding for the circuit court's authority may be found in the provisions of WIS. STAT. ch. 785 which permit a court to impose remedial sanctions for disobedience of its orders.

¶ 11. Before analyzing a circuit court's authority and the procedures for sanctioning contempt, however, we first briefly address Washington's immunity and jurisdictional arguments. Whether the circuit court had jurisdiction over Washington, and whether she can assert immunity from liability for the acts or omissions in question, are questions of law that we decide without deference to the circuit court. *See State ex rel. V.J.H. v. C.A.B.*, 163 Wis. 2d 833, 840, 472 N.W.2d 839 (Ct. App. 1991).

¶ 12. Washington argues that the supreme court established in *Paige K.B. v. Molepske*, 219 Wis. 2d 418, 580 N.W.2d 289 (1998), a rule of quasi-judicial immunity for guardians ad litem from any and all claims alleging negligence in the performance of their statutorily prescribed duties. To the extent that the court in

*Paige K.B.* limited immunity to guardians ad litem appointed in custody disputes under Wis. Stat. § 767.045,[4] Washington urges that we extend the rule to encompass the provision under which she was appointed, Wis. Stat. § 807.10. We conclude, however, that what distinguishes *Paige K.B.* from the present facts is not the statutory underpinnings of the guardian ad litem's appointment, but the nature of the allegations lodged against the guardian ad litem. The quasi-judicial immunity of a guardian ad litem described in *Paige K.B.* applies only to liability for "the negligent performance of his or her duties," *id.* at 421, not as a shield against court-imposed sanctions for failure to obey a court order.

¶ 13. The children in *Paige K.B.* commenced a separate action against their former guardian ad litem, seeking damages in tort and alleging negligent performance of his statutorily prescribed duties. The justification for granting quasi-judicial immunity to guardians ad litem in that context arises from the recognition that, in order to assist the court in objectively determining the best interests of the children, a guardian ad litem must be free to investigate and marshal evidence unhampered by harassment, intimidation, the specter of future litigation, or any other interference with impartial decision-making. *Paige K.B.*, 219 Wis. 2d at 433–34. No similar rationale justifies insulating a

---

[4] *See Paige K.B. v. Molepske,* 219 Wis. 2d 418, 427 n.4, 580 N.W.2d 289 (1998) ("Our review and conclusions in this case are limited to whether a GAL appointed by the circuit court under Wis. Stat. § 767.045 (2001–02) is entitled to absolute quasi-judicial immunity from negligence liability for performing his or her statutorily prescribed functions."). All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

guardian ad litem from the contempt powers of the court that appointed him or her.[5]

¶ 14. Although Hodan's petition on behalf of the four minors does not refer to the circuit court's contempt power or to sanctions for contempt, neither does it allege negligent performance of duties on Washington's part. Hodan asserted only that Washington failed to obey a court order requiring her to deposit the balance of the settlement checks into restricted trust accounts. We conclude that Hodan's allegations may properly be characterized as a motion for sanctions under WIS. STAT. § 785.03(1)(a), as opposed to a claim for damages caused by Washington's negligence.[6] Accordingly, the immunity rule established in *Paige K.B.* does not apply.

¶ 15. For similar reasons, we also reject Washington's argument that the circuit court lacked jurisdiction over her person. As with her assertion of immunity, this argument is premised on the idea that Hodan's motion was akin to a tort action for negligent performance, for which a separate summons and com-

---

[5] Judges, of course, enjoy judicial immunity from liability for our official acts or omissions, from which the immunity of court-appointed guardians ad litem derives. *See Paige K.B.*, 219 Wis. 2d at 424. This does not mean, however, that we cannot be sanctioned for violating rules of the Wisconsin Supreme Court or for willfully failing to perform assigned duties. *See* WIS. STAT. §§ 757.81(4)(a), (b) and 757.85.

[6] WISCONSIN STAT. § 785.03(1)(a) provides as follows:

(a) *Remedial sanction.* A person aggrieved by a contempt of court may seek imposition of a remedial sanction for the contempt by filing a motion for that purpose in the proceeding to which the contempt is related. The court, after notice and hearing, may impose a remedial sanction authorized by this chapter.

plaint should have been filed and properly served on Washington. However, "a contempt proceeding is derivative of and attached to the principal action in which it arises." *State ex rel. James L.J. v. Circuit Court for Walworth County*, 200 Wis. 2d 496, 511, 546 N.W.2d 460 (1996). Washington's allegedly contumacious act was her failure to obey a court order related to her representation of four minors in settling a personal injury action. Hodan's request for sanctions was filed on behalf of those four minors as a part of the same personal injury action. We conclude that the proceedings at issue were properly brought on by motion. *See* WIS. STAT. § 785.03(1)(a) (quoted at footnote 6). No separate action needed to be commenced against Washington, and there is no jurisdictional infirmity.[7]

---

[7] The fact that Washington was not the children's guardian ad litem at the time Hodan filed his motion does not alter our conclusion. She was acting as their guardian ad litem in the personal injury matter when she allegedly disobeyed the court's order. Moreover, we note that any "person who is alleged to be committing the contempt . . . may be brought in as a party for the purposes of the contempt motion . . . ." WIS. STAT. ANN. § 785.03, Judicial Council Committee's Note—1979, at 437 (West 2001). Although Hodan did not move to formally implead Washington, as long as the court that adjudicated the rights on which the contempt motion is based hears the motion for contempt, the fact that faulty procedures are used to bring the contemnor before the court will not deprive the court of jurisdiction to award contempt. *Dalton v. Meister*, 84 Wis. 2d 303, 309, 267 N.W.2d 326 (1978) (citing *Upper Lakes Shipping, Ltd. v. Seafarers Intl Union*, 22 Wis. 2d 7, 18, 125 N.W.2d 324 (1963)).

¶ 16. Having concluded that the contempt proceeding was properly before the circuit court, and that Washington enjoys no immunity from such a proceeding, we next address whether the court followed proper procedures in exercising its contempt power. This is a question of law that we review de novo. *See Oliveto v. Circuit Court for Crawford County*, 194 Wis. 2d 418, 429, 533 N.W.2d 819 (1995).

¶ 17. Contempt power is recognized as an "inherent" judicial power, that is, one that does not necessarily derive from legislative mandate and which inheres in the definition of a court. *See State v. Cannon*, 196 Wis. 534, 536–37, 221 N.W. 603 (1928); *State ex rel. Attorney General v. Circuit Court for Eau Claire County*, 97 Wis. 1, 8, 72 N.W. 193 (1897). For over one hundred twenty years, however, the Wisconsin Supreme Court has recognized legislative regulation of the contempt power, and the court has proscribed the exercise of this power outside of the statutory scheme. "[T]he power to punish for contempt was not conferred in the first instance by statute . . . [however, this court] holds that whenever a statute prescribes the procedure in a prosecution for contempt, or limits the penalty, the statute controls." *State ex rel. Lanning v. Lonsdale*, 48 Wis. 348, 367, 4 N.W. 390 (1880); *see also Douglas County v. Edwards*, 137 Wis. 2d 65, 87–88, 403 N.W.2d 438 (1987).

¶ 18. A number of statutes beyond those in Wis. Stat. ch. 785 address a circuit court's authority to find persons in contempt for violating court orders or other misconduct.[8] Additionally, a number of other statutes

---

[8] *See, e.g.*, Wis. Stat. §§ 885.11 and 885.12 (failure of a witness to appear punishable as contempt); Wis. Stat. § 880.252

authorize a court to sanction parties and/or attorneys for violating procedural rules or court orders.[9] The provision cited by Hodan as the basis for the circuit court's authority to sanction Washington, WIS. STAT. § 805.03, is among the latter. Although that section does not specifically reference contempt powers, it does authorize a circuit court to fashion "such orders . . . as are just" for the "failure of any claimant . . . to obey any order of the court . . . ." Section 805.03.

■

¶ 19. We do not agree, however, that the circuit court's authority to sanction Washington in this case for her purported failure to obey its order directing disposition of the minors' proceeds necessarily derives from WIS. STAT. § 805.03. Section 805.03 is captioned "Failure to prosecute or comply with procedure statutes," and it was enacted in 1975 as part of a comprehensive revision of the Wisconsin rules of civil procedure. *See In the Matter of the Promulgation of the Rules of Civil Procedure for the State of Wisconsin*, 67 Wis. 2d 585, 690–91 (1975). Case law upholding sanctions imposed under this section appear to deal exclusively with pre-trial,

---

(failure of a guardian to file accounting punishable as contempt); WIS. STAT. § 757.30 (practicing law without a license punishable as contempt); WIS. STAT. § 252.11(5) (failure to accept treatment for a sexually-transmitted disease punishable as contempt).

[9] *See, e.g.,* WIS. STAT. §§ 802.05, 802.10(7), 804.12, 805.03, and 814.025.

procedural violations.[10] Moreover, the Judicial Council note discussing WIS. STAT. § 785.01 states:

> It is not the intent of the council to make the failure to comply with a scheduling, discovery or pretrial order automatically contempt of court. Sanctions for failure to comply with these types of orders are specified in the rules of civil procedure. An order issued to compel compliance with a scheduling, discovery or pretrial order, however, may be enforced by contempt.

WIS. STAT. ANN. § 785.01, Judicial Council Committee's Note—1979, at 412 (West 2001).

¶ 20. Because Washington's allegedly contumacious act or omission had nothing to do with the violation of a pretrial, scheduling, or procedural order, we conclude that the circuit court's authority to sanction Washington for noncompliance with its substantive order directing the disposition of the minors' settlement proceeds is more firmly grounded in WIS. STAT. ch. 785, specifically in § 785.03(1)(a).

¶ 21. The procedure for sanctioning contempt under WIS. STAT. ch. 785 is dictated by the type of sanction sought to be imposed, remedial or punitive. WIS. STAT. § 785.03. A punitive sanction may be imposed "to punish a past contempt of court for the purpose of upholding the authority of the court." WIS. STAT. § 785.01(2). A

---

[10] *See, e.g., Anderson v. Circuit Court for Milwaukee County*, 219 Wis. 2d 1, 8–9, 578 N.W.2d 633 (1998) (holding that circuit court has authority to sanction attorney for violations of scheduling orders); *Hudson Diesel, Inc. v. Kenall*, 194 Wis. 2d 531, 542, 535 N.W.2d 65 (Ct. App. 1995) (holding that circuit court has authority to sanction attorney for failing to comply with discovery requests); *Buchanan v. General Cas. Co.*, 191 Wis. 2d 1, 8–9, 528 N.W.2d 457 (Ct. App. 1995) (upholding dismissal for failure to prosecute).

613

proceeding to impose punitive sanctions may be brought only by a district attorney, the attorney general, or "a special prosecutor appointed by the court," and requires the filing of "a complaint" which is to be "processed" under the criminal procedure statutes. WIS. STAT. § 785.03(1)(b). That did not happen in this case, and we conclude that § 785.03(1)(b) is inapposite.[11]

██

¶ 22. We therefore also conclude that what the circuit court imposed in this case were "remedial sanctions," i.e., ones "imposed for the purpose of terminating a continuing contempt of court." WIS. STAT. § 785.01(3). Washington's allegedly contumacious act or omission was her alleged failure to deposit, or see to the deposit of, the minors' settlement proceeds in restricted accounts as ordered by the court. So long as no properly restricted accounts containing the settlement proceeds existed, her alleged contempt continued. Thus, the court should have proceeded under WIS. STAT. § 785.03(1)(a), which establishes a procedure for the "nonsummary" imposition of remedial sanctions, and under WIS. STAT. § 785.04(1) which specifies allowable remedial sanctions.

¶ 23. "[F]or a remedial sanction to be entertained, there must be a motion to the court by an 'aggrieved person.' This contemplates someone other than the trial court." *B.L.P. v. Circuit Court for Racine County*, 118 Wis. 2d 33, 44, 345 N.W.2d 510 (Ct. App. 1984). This

---

[11] By the same token, the "summary procedure" for "contempt of court in the actual presence of the court" does not apply on the present facts. WIS. STAT. § 785.03(2). Whatever Washington did or failed to do in noncompliance with the minors' settlement orders did not occur in the presence of the court.

requirement was met on the present record by Hodan's motions filed on behalf of the aggrieved minors. Hodan's motions allege that Washington violated a court order and request the court to: (1) order her to reimburse the accounts for the missing funds; (2) vacate the approval of her attorney fees for obtaining the settlements; and (3) order her to pay Hodan's guardian ad litem fees. Although not captioned as motions under WIS. STAT. § 785.03(1)(a), they contain the essentials of a motion seeking remedial sanctions for disobedience of a court order under that paragraph.

¶ 24. Upon the filing of a motion seeking remedial sanctions for contempt, an on-the-record hearing must be held "for due process purposes." *See Mercury Records Prods., Inc. v. Economic Consultants, Inc.*, 91 Wis. 2d 482, 504, 283 N.W.2d 613 (Ct. App. 1979). The evidence adduced at the hearing must support resultant findings of fact that the contemnor engaged in "intentional . . . [d]isobedience, resistance or obstruction of the authority, process or order of a court." WIS. STAT. § 785.01(1)(b). No evidentiary proceedings were conducted in this case, nor were facts stipulated to on the record that would support the necessary findings. We conclude that the lack of evidentiary proceedings, as well as the absence of proper findings to support the imposition of sanctions, violate both the requirements of ch. 785 and of due process.[12] *See* WIS. STAT. § 785.03(1)(a) ("The court, *after notice and hearing,* may impose a remedial sanction . . . ." (emphasis

---

[12] A finding of contempt rests on the trial court's factual findings. *See State v. Rose*, 171 Wis. 2d 617, 623, 492 N.W.2d 350 (Ct. App. 1992). The critical findings are that the party was able to comply with the order and that the refusal to comply was willful and with intent to avoid compliance. *Cf. id.*

added)); *Dennis v. State*, 117 Wis. 2d 249, 261, 344 N.W.2d 128 (1984) ("[S]tatutory requirements and due process require that the defendant be aware of what he must answer to so that he can be prepared to offer proof and explanation showing his good faith efforts to comply with the court's orders.").

¶ 25. We conclude that the circuit court should have followed procedures under Wis. Stat. § 785.03(1)(a) for imposing remedial sanctions but did not do so. Those procedures require, at a minimum, notice that sanctions for contempt are being sought, and in the absence of stipulated facts, an evidentiary hearing sufficient to permit the court to make specific findings regarding whether the alleged contemnor intentionally disobeyed its orders.[13]

---

[13] As we have noted, no evidentiary hearing was conducted in this case. Washington and Hodan did submit affidavits in support of their various motions, and each made assertions of fact to the court by way of their oral and written arguments and through correspondence to the court. Assertions by Washington included that the mothers of the minors had withdrawn the funds and that the funds had been spent for the benefit of the minors, while Hodan asserted that Washington had advised the mothers that they could ignore the requirements for restricted accounts and court permission for expenditures. Such unsworn, hearsay assertions are of course insufficient to support judicial findings in the absence of a stipulation.

We also note that Hodan argues Washington waived any objection to the circuit court's failure to hold an evidentiary hearing by not requesting that Judge Haese conduct one. It is evident from the record, however, that neither the attorneys nor the court focused on the fact that the proceedings following Hodan's appointment were in fact, if not in name, contempt proceedings under Wis. Stat. § 785.03(1)(a). At one of the early status conferences, with both mothers in attendance, the court sua sponte declared that "I would swear the parties, but I don't

616

¶ 26. Finally, we consider whether the sanctions the court imposed on Washington are among the remedial sanctions permitted by WIS. STAT. ch. 785 for violation of a court order. WISCONSIN STAT. § 785.04(1) authorizes a court to impose one or more of the following remedial sanctions:

> (a) Payment of a sum of money sufficient to compensate a party for a loss or injury suffered by the party as the result of a contempt of court.

> (b) Imprisonment if the contempt of court is [among others, disobedience of a court order]. The imprisonment may extend only so long as the person is committing the contempt of court or 6 months, whichever is the shorter period.

> (c) A forfeiture not to exceed $2,000 for each day the contempt of court continues.

> (d) An order designed to ensure compliance with a prior order of the court.

> (e) A sanction other than the sanctions specified in pars. (a) to (d) if it expressly finds that those sanctions would be ineffectual to terminate a continuing contempt of court.

want to put them in a position of incriminating themselves." Moreover, we note that the lack of a hearing and factual findings were specifically raised during Judge Guolee's consideration of Washington's motion to reconsider. Although Judge Guolee declined to rule on it, he was clearly aware that Washington was asserting a violation of her due process rights. We are thus satisfied that Washington sufficiently raised the issue in the circuit court to have permitted that court, albeit perhaps by a different judge, to remedy the procedural deficiencies for which we now reverse and remand.

¶ 27. The judgments against Washington for the original amounts of the minors' settlements that were to have been deposited in restricted accounts for them, together with interest, appear to be a proper remedial sanction under Wis. Stat. § 785.04(1)(a). The court may impose the payment of this money as a sanction, however, only if it is satisfied that the payments are necessary to compensate the minors "for a loss or injury [they] suffered . . . as the result of a contempt of court." *See* Wis. Stat. § 785.04(1)(a); *Benn v. Benn*, 230 Wis. 2d 301, 311, 602 N.W.2d 65 (Ct. App. 1999). By the same token, Hodan's fees for pursuing the contempt sanctions on behalf of the minors are recoverable under Wis. Stat. § 785.04(1)(a). *Town of Seymour v. City of Eau Claire*, 112 Wis. 2d 313, 320, 332 N.W.2d 821 (Ct. App. 1983).

¶ 28. We find no specific language in Wis. Stat. § 785.04(1), however, that would permit the court to vacate its prior approval of the attorney fees Washington earned for procuring the settlements.[14] In disbursing these fees to herself, Washington complied with the express provisions of the orders approving the minors' settlements. We fail to see how vacating the approval for disbursement of these fees represents compensation ·of the minors for losses stemming from Washington's alleged failure to comply with other provisions of the

---

[14] We are uncertain, as well, of the effect of the court's orders vacating its prior approval of the fees. In each of the orders approving the minors' settlements, Washington was authorized to disburse attorney fees to herself. We assume that she did so. None of the appealed judgments appear to require her to disgorge these fees by paying them over to the minors or to Hodan or the court.

orders—those requiring restrictive deposit of the net proceeds for the minors' benefit. Although a court may impose per diem forfeitures of money under § 785.04(1)(c) to compel the cessation of a continuing contempt, we find nothing in the record to indicate the court intended to have Washington "forfeit" her fees as an incentive for her to cease a continuing contempt.

¶ 29. In addition, WIS. STAT. § 785.04(1)(d) and (e) permit the court to impose additional, unspecified sanctions in order "to ensure compliance with a prior order of the court" or "to terminate a continuing contempt." The present record, however, provides no support for the proposition that confiscating Washington's previously approved fees is necessary or appropriate to achieve those ends. We thus agree with Washington that, in the absence of a motion and appropriate showings under WIS. STAT. § 806.07(1),[15] the court should not have modified the settlement approval orders by vacating the approval of her fees.

¶ 30. On remand, after notice and a hearing, if the court finds that Washington intentionally disobeyed its orders regarding disposition of the minors' settlement proceeds, it may impose monetary sanctions pursuant to WIS. STAT. § 785.04(1). These may include, under § 785.04(1)(a), requiring Washington to compensate the minors for their losses suffered as a result of her contempt and requiring her to pay the costs of procuring the restoration of the minors' funds. If the court deems additional monetary sanctions necessary or ap-

---

[15] WISCONSIN STAT. § 806.07(1) permits a court to grant relief from an order or judgment, "[o]n motion and upon such terms as are just," for reasons which include "[m]istake, inadvertence, surprise, or excusable neglect"; "[n]ewly-discovered evidence"; and "[f]raud, misrepresentation, or other misconduct of an adverse party."

propriate, such sanctions must be tied to the purposes set forth in paragraphs § 785.04(1)(c)-(e).

## CONCLUSION

¶ 31. For the reasons discussed above, we reverse the appealed judgments, as well as the orders vacating approval of Washington's attorney fees.[16] We remand for further proceedings consistent with this opinion.

[16] Hodan renews in his response brief assertions he made in support of earlier motions to dismiss Washington's appeal. He claims the appeal was untimely and from non-final orders. We denied Hodan's motions because the record shows that Washington timely appealed six judgments entered on July 1, 2002. We acknowledge that her notice of appeal references two earlier, non-final orders (an order to reinstate the minors' settlement funds and an order to pay Hodan's guardian ad litem fees), but each of these orders are subsumed in the July 1 judgments. We may look to an appellant's intent when determining what has been appealed. *See State v. Ascencio*, 92 Wis. 2d 822, 824–26, 285 N.W.2d 910 (Ct. App. 1979) (holding that when intent was to appeal judgment, notice of appeal directed to nonfinal order treated as appeal from judgment). A notice of appeal identifying a nonappealable order is sufficient to invoke appellate jurisdiction if it is apparent that the appellant intended to appeal an appealable order and the notice was timely with respect to the final order. *See Culbert v. Young*, 140 Wis. 2d 821, 824, 412 N.W.2d 551 (Ct. App. 1987).

Washington also claims error in the orders that vacated approval of her attorney fees. Although these orders did not become a part of the appealed judgments, they are also properly before this court. *See* Wis. Stat. Rule § 809.10(4) (appeal from a final judgment or order brings before the court all prior non-final judgments, orders, and rulings adverse to the appellant and favorable to the respondent). We thus again reject Hodan's jurisdictional arguments.

*By the Court.*—Judgments reversed and causes remanded with directions.