COURT OF APPEALS
DECISION
DATED AND FILED

September 13, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2023AP809-FT**
**2023AP810-FT**

Cir. Ct. Nos. 2022JC3
2022JC4

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

No. **2023AP809-FT**

IN RE THE FINDING OF CONTEMPT IN:

IN THE INTEREST OF A.G., A PERSON UNDER THE AGE OF 17:

DAVID PATTON,

APPELLANT,

V.

CIRCUIT COURT FOR KENOSHA COUNTY, THE HONORABLE CHAD G. KERKMAN, PRESIDING,

RESPONDENT.

**No. 2023AP810-FT**

IN RE THE FINDING OF CONTEMPT IN:

IN THE INTEREST OF A.B., A PERSON UNDER THE AGE OF 17:

DAVID PATTON,

    APPELLANT,

  V.

CIRCUIT COURT FOR KENOSHA COUNTY, THE
HONORABLE CHAD G. KERKMAN, PRESIDING,

    RESPONDENT.

---

APPEALS from an order of the circuit court for Kenosha County: CHAD G. KERKMAN, Judge. *Affirmed*.

¶1 GUNDRUM, P.J.[1] Attorney David Patton appeals from an order of the circuit court finding him in contempt and ordering him to pay a $100 fine. For the following reasons, we affirm.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(h) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

***Background***

¶2      The contempt of court arises out of the State's filing of two child-in-need-of-protection-and-services petitions related to the children of Patton's client, Maria.[2]  In March 2023, Kenosha County Department of Children and Families (DCFS) requested that the circuit court require Maria to sign releases for her own medical information.  The court previously had ordered that as a condition of the return of her children, Maria had to "[s]ign all releases of information concerning [her] own medical providers, as her medical issues and capabilities need to be assessed."  At a March 22, 2023 review hearing, DCFS indicated that without the records it could not determine whether Maria needed particular assistance from DCFS in satisfying the conditions for her children's return.

¶3      At the review hearing, Patton objected to DCFS's request on the basis that it was overbroad and compromised Maria's privacy with regard to the records being requested.  He requested that the releases "be limited to what [DCFS] actually needs … a more tailored approach," although he provided no specific suggestions for what such tailoring would look like, other than to intimate that "psyche evals from the endocrinologist" had questionable relevancy.  DCFS responded that

> [Maria] reports she can't complete a majority of the Conditions of Return because of her … medical conditions, but she hasn't provided us any information or knowledge about what are those medical conditions.  What does that look like for her.  How does that impact her ability to parent.

---

[2]  Maria is a pseudonym.

> So DCFS is left not being able to efficiently provide all the services needed because we don't know what's really going on.

¶4 The circuit court agreed with DCFS that Maria's "health is very much a part of meeting the Conditions of Return" and the medical releases were appropriate and not overbroad. It stated that Maria "needs to sign these releases or she will not be meeting her Conditions of Return" and would not be able to get her children back. Counsel for the State then indicated that Maria may be precluded from raising a future defense that her medical issues are impeding her ability to meet the conditions of return

> [b]ecause if we can't confirm that the medical issues are stopping her from meeting her Conditions of Return and be able to tailor a plan to assist in that, then she may not be able to say, well, my medical issues stopped me from doing it if she is not willing to release that information.

¶5 The circuit court responded: "Absolutely," and the following exchange then took place.

> ATTORNEY PATTON: Your Honor … did you review the request?
>
> THE COURT: I have made my decision.
>
> ATTORNEY PATTON: So you didn't review the request?
>
> THE COURT: I have made my decision.
>
> ATTORNEY PATTON: Okay. I understand that you've made your decision. I asked you a question. Are you willing to answer it?
>
> THE COURT: And I'm not answering it. I said I have made a decision.
>
> ATTORNEY PATTON: Okay.
>
> THE COURT: You don't get to ask that question.
>
> ATTORNEY PATTON: Okay.

4

THE COURT: Is it in the record? If not, I haven't reviewed it.

ATTORNEY PATTON: Okay.

THE COURT: You get to be respectful to this Court. If it's not in the record, obviously, I haven't reviewed it.

ATTORNEY PATTON: Okay.

THE COURT: Based upon what I'm hearing here today, I made my decision.

ATTORNEY PATTON: Okay. You made a decision that it wasn't overly broad without reviewing the record. That is correct, Your Honor. Without reviewing—

THE COURT: You are now in contempt of court. I just told you you do not get to talk to me like that. You do not get to be disrespectful to this Court. Now you owe this Court $100.

ATTORNEY PATTON: Okay.

THE COURT: Payable within five days. Watch how you talk to this Court or any other Court. That's it for today.

¶6 The circuit court subsequently entered a written order finding that (1) "Patton argued with the court after a decision was made. He continued to argue with the court and demanded an answer to his question, which caused a disruption in the court," and (2) "[a] finding of contempt was required for purposes of preserving order in the court and protecting the authority and dignity of the court." The court ordered that Patton "is in contempt of court for continuing to speak out of turn and arguing with the court after a decision was made. He is fined $100 payable within 5 days or a civil judgment shall be entered."

¶7 On March 27, 2023, Avery Abbott, who the record suggests works with Patton at his law firm, e-mailed the circuit court's judicial assistant "requesting a hearing for the Court's summary judgement [sic] in which

5

Attorney Patton is entitled to representation and allocution." The e-mail continued: "At your earliest convenience, please provide dates for which this hearing can be held." Patton was copied on the e-mail. Twelve minutes later, the judicial assistant provided four separate dates and times when the requested hearing could be held the following week. Two days later, having apparently received no response from Abbott or anyone else at Patton's office, the judicial assistant sent another e-mail stating, "Please see dates below. If I don't hear back by 5pm on 3/30/23 I will pick one." Later that same day, Grant Henderson, who the record suggests is an attorney with Patton at his law firm and is representing Patton in this appeal, e-mailed the judicial assistant stating, "Thank you for following up. At this point, I've been able to review the final order and the transcript we received today, so we are withdrawing our request for a hearing on the matter." Several days later, the court entered judgment against Patton in the amount of $100.

¶8      Patton appeals.

### Discussion

¶9      Patton contends the circuit court erred in determining his conduct warranted a contempt finding and that even if it did not err in this regard, it erred in "fail[ing] to afford or notify Attorney Patton of his right to allocution, rendering the imposed fine unenforceable." We disagree and affirm.

¶10     We review de novo whether the circuit court followed proper procedures in exercising its contempt power. *Evans v. Luebke*, 2003 WI App 207, ¶16, 267 Wis. 2d 596, 671 N.W.2d 304. "A circuit court's contempt decision is discretionary and will be affirmed if the court reached a reasonable decision

after applying the proper legal standards to the relevant facts." *Society Ins. v. Bodart*, 2012 WI App 75, ¶7, 343 Wis. 2d 418, 819 N.W.2d 298. Whether a contempt of court occurred is a question of fact, which we uphold unless it is clearly erroneous. *Oliveto v. Circuit Ct. for Crawford Cnty.*, 194 Wis. 2d 418, 427, 533 N.W.2d 819 (1995).

¶11 The parties here agree the circuit court operated under the contempt procedures identified in WIS. STAT. § 785.03(2). That provision states:

> The judge presiding in an action or proceeding may impose a punitive sanction upon a person who commits a contempt of court in the actual presence of the court. The judge shall impose the punitive sanction immediately after the contempt of court and only for the purpose of preserving order in the court and protecting the authority and dignity of the court.

WISCONSIN STAT. § 785.01(1) provides, as relevant here, that "[c]ontempt of court" means intentional "[m]isconduct in the presence of the court which interferes with a court proceeding or with the administration of justice, or which impairs the respect due the court" or "[d]isobedience, resistance or obstruction of the authority, process or order of a court."

¶12 While Patton claims he was merely attempting to "clarify" the record and "at no point did his attempt to make a record of the decision evolve into an act that would undermine the authority or the dignity of the circuit court," we disagree. We conclude the circuit court did not clearly err in finding that Patton's conduct and comments constituted contempt of court.

¶13 The record indicates Patton was exhibiting both "[m]isconduct in the presence of the court … which impair[ed] the respect due the court" and "resistance … of the authority" of the court, in violation of WIS. STAT.

7

§ 785.01(1)(a) and (b), respectively.  Moreover, this exhibition took place in front of numerous other individuals involved in the case.[3]  After the court made its decision that the medical release was fine as it was and did not need to be limited, Patton began challenging the integrity of the court and its decision by stating: "Your Honor … did you review the request?"  When the court responded that it had made its decision, Patton's challenge escalated, "So you didn't review the request?"  When the court again responded, "I have made my decision," Patton came back with, "I asked you a question."  Even within the full context of Patton's response here,[4] Patton was upping his challenge to the court, and his response reads as if he was attempting to strong-arm the court into answering his question.  The court seems to have interpreted Patton's response similarly as it shortly thereafter stated, "You get to be respectful to this Court," and in its written order stated that Patton "continued to argue with the court and demanded an answer to his question."  Immediately after telling Patton "[y]ou get to be respectful to this Court," the court stated, "If it's not in the record, obviously, I haven't reviewed it."  Patton responded, "Okay."

¶14    The circuit court next stated, "Based upon what I'm hearing here today, I made my decision."  Despite the warning the court delivered to Patton just moments earlier about being respectful to the court, Patton delivered his snarky, rude, and unnecessary response, "Okay.  You made a decision that it wasn't overly

---

[3] The record indicates that in addition to Maria, the father of the children was also present, as well as the assistant district attorney representing the State, a representative from the Department of Children and Families, and the guardian ad litem.

[4] The full context is that Patton responded:  "Okay.  I understand that you've made your decision.  I asked you a question.  Are you willing to answer it?"

broad without reviewing the record. That is correct, Your Honor. Without reviewing—." At that point, the court found Patton's conduct and comments constituted contempt, and we conclude the court did not err with this finding as the conduct and comments "impair[ed] the respect due the court" and also exhibited Patton's resistance to the court's authority. *See* WIS. STAT. § 785.01(1)(a). While an appellate court is obviously not able to directly observe the tone and inflection with which words are delivered at a hearing, here Patton's tone and inflection nearly jump off the page. Patton was not "making a record" on the issue for his client or "summarizing," as he claims; the record already spoke for itself. As the court correctly states in its response brief in this appeal, Patton's questions instead "were an attempt to make the court look bad for not looking at releases he himself had failed to provide to the court."[5] The court's finding that Patton's conduct and comments constituted contempt of court was not clearly erroneous.

¶15 Patton next complains that he was not afforded an opportunity to provide an allocution to the circuit court. We disagree.

¶16 Both the circuit court and Patton direct us to our state supreme court's decision in *Oliveto*. In that case, immediately after the circuit court pronounced the defendant's sentence, defense counsel turned to the defendant and said "ridiculous" loud enough for those in the courtroom to hear. *Oliveto*, 194 Wis. 2d at 424. After the court confirmed with counsel she did indeed say this, it

---

[5] The circuit court repeatedly represents in its response brief that Patton never submitted the medical releases in question to the court for its consideration and that they were not otherwise in the record at the time of the review hearing. Patton does not dispute this in his reply brief.

found her in contempt, fined her $250, and ordered her to get her money out of the purse in her car and "bring it in and pay" the fine immediately. *Id.* at 425.

¶17 On review, the supreme court agreed counsel had engaged in contemptuous behavior with her "ridiculous" comment. *Id.* at 428. Nonetheless, the *Oliveto* court set aside the contempt finding and fine because the circuit court had not afforded counsel an opportunity for allocution after it found her in contempt but before the punishment was imposed, which would have afforded the court an opportunity "to vacate the contempt order entirely or to give a more lenient sanction, after considering any mitigating factors revealed in the allocution." *Id.* at 435-36. The *Oliveto* court indicated an individual facing a sanction after a finding of contempt should be provided "an opportunity … to apologize or to defend or explain the contumacious behavior," an opportunity that "allows the contemnor to speak in mitigation of the misconduct which the court has already determined." *Id.* at 436.

¶18 In the case now before us, at the review hearing and in a written order entered the same day, the circuit court stated that Patton's $100 fine would be "payable within five days." Patton, however, e-mailed the court before that time period expired requesting a hearing for the specific purpose of allowing Patton an opportunity for allocution. Twelve minutes later, the court responded by providing Patton four dates and times the following week for such an opportunity. When the court heard no response back from Patton within the next two days, it reached out to Patton, inviting him to select one of the times offered and stating that if he did not do so by March 30, 2023, the court would "pick one." Instead of choosing one of the four options or suggesting an alternative option for exercising

10

his right of allocation, Patton explicitly withdrew his request for that opportunity. It was only after all of this that the court entered judgment for the $100 fine.

¶19 Based on this record, we can only conclude the circuit court properly afforded Patton an opportunity to exercise his right of allocution related to the $100 fine, and Patton unmistakably declined to exercise that right. The court did not err in how it handled Patton's right to allocution.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.